# Pittsburg, Appellant, *v.* Pittsburg, Carnegie & Western Railroad Company.

*Railroads—Occupancy of streets—Municipal consent—Act of April 4, 1868, P. L. 62—Constitution of 1874, section 1, article 17.*

A railroad company incorporated under the general railroad law of April 4, 1868, and its supplements, has no power to enter upon, occupy and cross the streets of a municipality without the consent of the municipality. The express prohibition of section 12 of the act of 1868, which prevents the occupation of a street without municipal consent is in no way repealed by section 1, article 17 of the constitution of 1874, which provides

that " any association or corporation organized for the purpose shall have the right to construct and operate a railroad between any points within the state, and to connect at the state line with railroads of other states."

The constitution is to be interpreted with reference to previous legislation of the state, and powers always previously exercised by the legislature remain to them, unless expressly or impliedly prohibited.

Argued Nov. 6, 1902. Appeal, No. 164, Oct. T., 1902, by plaintiff, from decree of C. P. No. 3, Allegheny Co., Nov. T., 1901, No. 45, on bill in equity, in case of Pittsburg v. Pittsburg, Carnegie & Western Railroad Company and Arthur McMullen, trading as Arthur McMullen & Company. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Bill in equity to restrain a railroad company from crossing streets of a city where no municipal consent had been given. Before McCLUNG, J.

Counsel agreed upon the following statement of facts :

The plaintiff in this case is the city of Pittsburg, and the defendants are the Pittsburg, Carnegie & Western Railroad Company and Arthur McMullen.

McMullen is simply a contractor whom the railroad company, defendant, has employed to do the work which the plaintiff seeks to enjoin. His rights, then, are simply those of the other defendant, and therefore, the case may be discussed as if the railroad company were the only defendant.

The defendant railroad company was formed by the consolidation of the Washington County Railroad Company and the Pittsburg & Mansfield Railroad Company, July 17, 1901. The Pittsburg & Mansfield Railroad Company was originally incorporated in 1894, and reorganized, after judicial sale, August 24, 1898.

The defendant railroad company is incorporated under the general railroad act of 1868, as were its constituent companies, the charters of which were all obtained in or since 1894. Said charters together authorized the defendant railroad company to construct a railroad from Pittsburg to the state line where it is intersected by Cross Creek.

The defendant is authorized by act of congress to bridge the Monongahela river at a point where the pier, whose con-

struction is sought to be enjoined by the bill, is located, provided it completes said bridge by March 2, 1904, and the location of the pier, etc., has been approved by the secretary of war.

The defendant's contractor proposed to remove a pier that had been erected upon a wharf. This pier had been erected by the Pittsburg & Mansfield Railroad Company prior to the filing of the bill in this case, with the assent of the city of Pittsburg, by its ordinance, duly passed, which limited the time for the construction of the bridge, which time limit has expired long before the time of filing the bill in this case.

The defendant railroad company proposes to construct from the pier located upon the wharf a span of its bridge or approach, to an abutment or anchor pier situate about 120 feet north of the north line of Water street, in the city of Pittsburg, and the span when constructed will be at least 346 feet in length, being at least twenty-five feet for the full width of the street.

The defendant railroad company proposes to construct and operate its railroad on a viaduct reaching from the anchor pier on private property 120 feet north of the north line of Water street, to its terminus at or near Ferry street and Liberty avenue, in the city of Pittsburg; said viaduct will have a clearance of not less than twenty-five feet over First, Second, Third and Fourth avenues, and all the pedestals and supports necessary to support said viaduct will be located upon real estate owned by the defendant railroad company.

The defendant railroad company intends to connect its bridge across the Monongahela river, on the south side of the river, with an iron and steel trestle or viaduct, extending from said bridge across Carson street to the bluff of Mount Washington, and thence proceed to a tunnel through Mount Washington to the city line, crossing several streets and highways, but never at grade, either crossing them overhead or on undergrade crossings, leaving the roadway between building lines unimpaired, and where the crossing is overhead, in all cases provided at least twenty-five feet headway or clearance.

The railroad being constructed by the defendant company is an original construction, and not an elevation or reconstruction of a railroad heretofore constructed and in operation.

The defendant company has expended in the counties of Allegheny and Washington in the state of Pennsylvania, the sum of $3,036,298.75 for actual construction in its railroad and the acquisition of property necessary thereto.

The defendant railroad company together with Cross Creek Railroad company, a corporation incorporated under the laws of the state of West Virginia, the Pittsburg, Toledo & Western Railroad Company, a corporation incorporated under the laws of the state of Ohio, will form, when the railroad of the defendant company is completed, a system of transportation between the city of Pittsburg and the town of Jewett, in Ohio; and the defendant railroad company and the Wheeling & Lake Erie Railroad Company, a corporation of the state of Ohio, affording the defendant company trackage rights which will enable it to transport freight and passengers from Pittsburg to Toledo, Chicago and points west.

The defendant company has contracted for and is now actually engaged in completing the construction of its road as authorized by its charter, and is actually crossing with said construction the streets and highways of the city of Pittsburg alleged in the bill of complaint filed in this case.

McCLUNG, J., filed a lengthy opinion which concluded as follows:

Our conclusion is, that a railroad company, incorporated under the act of 1868, since the constitution of 1873 went into effect, where one of its termini is a city, whilst it is liable for all injury to property, cannot be prevented by the city from crossing a street, where such crossing is necessary in order that it may reach that part of the city to which it must go to do its work effectively.

*Error assigned* was decree dismissing the bill.

*W. A. Blakeley*, with him *Thomas D. Carnahan* and *A. M. Thompson*, for appellant.—The railroad company could neither occupy longitudinally nor cross any street or alley of the city of Pittsburg without its consent.

The wharf and streets sought to be occupied by the appellee, being established, used and enjoyed by the public, can-

not be taken under the delegated power of eminent domain without an express legislative grant or by virtue of an implied power arising out of an absolute necessity : Groff's App., 128 Pa. 621; Penna. R. R. Co.'s App., 93 Pa. 150; Pittsburg Junction R. R. Co.'s App., 122 Pa. 511; Cronise v. Cronise, 54 Pa. 255; Boston, etc., R. R. Corp. v. Salem, etc., R. R. Co., 68 Mass. 1; Hamilton Ave., 14 Barb. 405; Penna. R. R. Co. v. Phila. Belt Line R. R. Co., 29 W. N. C. 206; Phila. v. Schuylkill River East Side R. R. Co., 33 W. N. C. 183; Phila. v. River Front R. R. Co., 173 Pa. 334; Penna. R. R. Co.'s Appeal, 116 Pa. 55; Market Co. v. Railroad Co., 142 Pa. 580; Pa. Sch. V. R. R. Co. v. P. & R. R. R. Co., 157 Pa. 42; P. S. V. R. R. Co. v. P. R. R. R. Co., 160 Pa. 277.

*A. M. Neeper*, with him *W. M. Lindsay*, for appellees.—A railroad company, incorporated under the act of April 4, 1868, and its supplements, has the right to enter a city in Pennsylvania, and construct and operate its railroad therein, provided it does not enter upon and occupy the highways in said city longitudinally, but merely crosses the highways of said city by overgrade and subway crossings, leaving said highways wholly unobstructed at grade, clearing the same with ample headroom for traffic on said highways, without the consent of said city : Case of Philadelphia & Trenton R. R. Co., 6 Wharton, 25; Clinton v. Cedar Rapids, etc., R. R. Co., 24 Iowa, 455; Council Bluffs v. Kansas City, etc., R. R. Co., 45 Iowa, 338; Com. v. Moir, 199 Pa. 534; Southwark Railroad Co. v. City of Phila., 47 Pa. 314; Branson v. Phila., 47 Pa. 329; McGee's Appeal, 114 Pa. 470; Pittsburg v. Epping-Carpenter Co., 194 Pa. 318; People v. Kerr, 27 N. Y. 188.

The exercise of the right to locate the route on streets of a city is vested in the discretion of the directors of the company exclusively, and is not reviewable by the court: Struthers v. Dunkirk Railroad Co., 87 Pa. 282; N. Y., etc., Railroad Co. v. Young, 33 Pa. 175; Cleveland, etc., Railroad Co. v. Speer, 56 Pa. 325; Parke's Appeal, 64 Pa. 137.

Article 17, section 1, of the constitution, confers upon railroad companies incorporated under the act of 1868, as is the defendant railroad company, " the right to construct and operate a railroad between any points within this state and to con-

nect at the state line with railroads of other states : " City
of Allegheny v. Millville, etc., Street Ry. Co., 159 Pa. 411;
Plymouth Township v. Chestnut Hill & Norristown Ry. Co.,
168 Pa. 181.

If there be anything in the 12th section of the act of 1868,
which would restrict, limit, or is repugnant to the grant to the
railroad corporation that it may construct its line of railroad
between any points in the commonwealth, then so much of the
act of 1868 is inoperative and void: Commonwealth v. Max-
well, 27 Pa. 444; Chase v. Miller, 41 Pa. 402; Hills v. Chi-
cago, 60 Ill. 86 ; Endlich on Interpretation of Statutes, sec-
tion 540, p. 759.

The exercise of this power of location has been construed by
the court to be vested in the directors and exercisable by them
at their discretion without the power to review such exercise
or discretion in the courts or in the legislature : Common-
wealth v. Erie & North East R. R. Co., 27 Pa. 339 ; New York
& Erie R. R. Co. v. Young, 33 Pa. 175; Struthers v. Dunkirk,
etc., R. R. Co., 87 Pa. 282; Anspach v. Mahanoy & Broad
Mountain R. R. Co., 5 Phila. 491 ; Parke's Appeal, 64 Pa. 137;
Williamsport, etc., R. R. Co. v. Phila., etc., R. R. Co., 141
Pa. 407; Cleveland & Pittsburg R. R. Co. v. Speer, 56 Pa.
325.

OPINION BY MR. JUSTICE DEAN, January 5, 1903 :

There is compressed in the question involved, as stated by
appellant's counsel, the entire history of this case, " Has a rail-
road company incorporated under the general railroad laws of
1868 and its supplements, the power to enter upon, occupy and
cross the streets of a municipality without the consent of the
municipality ? "  The company is organized under and derives
its being from the general railroad act.  Section 12 of the Act
of April 4, 1868, P. L. 62, reads :

" This act shall not be so construed as to authorize the for-
mation of street passenger railway companies, to construct pas-
senger railways under or by virtue of its provisions in any city,
or borough of this commonwealth, nor to authorize any cor-
porations, formed under this act, to enter upon and occupy any
street, lane or alley, in any incorporated city in this common-

wealth, without the consent of such city having been first obtained."

The defendant desires to cross the city without its consent; just what street it will occupy or to what extent, it is not material to inquire. If the answer to the question involved be determined solely by the powers of defendant under the statute authorizing its incorporation, we would not attempt to answer it by trying to prove that two and two make four, not five, but would at once say, clearly, it has no such power; but the court below and appellee's counsel say we must write into the act of 1868, this much of section 1, article 17 of the constitution of 1874: " Any association or corporation organized for the purpose shall have the right to construct and operate a railroad between any points within the state, and to connect at the state line with railroads of other states."

The court was of opinion that if the act of 1868 forbids mere crossing of the city without its consent, then, to that extent, it is in conflict with the constitution, and the statute must give way. It will be noticed the language is general. At the adoption of the constitution, no legislation conferred such powers on railroads as claimed here. The act of 1849 and its supplements, and the act of 1868 express the scope and limits of their powers at the time of the adoption of the constitution. That instrument would not enlarge these limits unless, the intention to do so was clearly expressed or plainly to be implied. In Cronise v. Cronise, 54 Pa. 255, we said : " The constitution is to be interpreted with reference to previous legislation of the state, and powers always previously exercised by the legislature remain to them, unless expressly or impliedly prohibited." And this is the doctrine of the text writers. See Cooley on Consti. Limitations, 57, and Story on the Constitution, chap. 5. Where a power theretofore, has always been exercised by the legislature, a constitutional withdrawal of it by the people must be plain. If doubtful, it will not be made clear by construction. The people through the legislature have unlimited power, except, where they impose upon themselves constitutional restraints. If the words of the instrument convey a definite meaning involving no contradiction of other parts of it, they are to receive their obvious meaning. The learned judge of the court below, is of opinion, that the general purpose of this clause was to encourage

competition between railroad companies and the particular intent was to take away the power of the legislature to smother it by discriminating between different companies.   We are not inclined to question the general correctness of these observations, but we think his conclusion that this general purpose gives a specific meaning, such as he gives here to the words " between any points within the state" is not warranted by any authoritative rule of interpretation.

The cases cited do not meet the point raised here ; the subject-matter in those cases was different and the decisions must be understood with reference thereto.   For example Commonwealth v. Erie, etc., Railroad Company, 27 Pa. 339.   The railroad company was authorized by its charter to build a road from the borough line as fixed at the date of the charter ; afterwards the borough was enlarged ; the company asserted a right to build the road from a point sixty rods south of the old borough line.   It was held that the change in the limits did not authorize the company to change the terminal.   In Western Penna. Railroad Company's Appeal, 99 Pa. 155, the question was, what were the rights of the railroad company to change its terminal after it had entered into the city by the latter's express authority?   Penna. Railroad Company v. Marchant, 119 Pa. 541, was a construction of section 8, article 16 of the constitution on an entirely different subject from that in section 1, article 17, the one under consideration.   The question here, is not what construction is to be placed upon the words of a statute or a charter passed after the adoption of the constitution, but what construction is to be placed upon the constitution in view of the legislation existing at the adoption of that instrument?   The answer is that given in Cronise v. Cronise, supra, " The constitution is to be interpreted with reference to previous legislation of the state and powers always previously exercised by the legislature."   The constitution, we may assume, with the court below, sought to encourage railroad competition ; the act of 1868 promoting that object was fully before the convention ; it gave the absolute right to any railroad company to construct a railroad between any two points within the state, just what the constitution aimed to accomplish.   Under this act, all the large cities with traffic demands, the sea and state boundaries of other states, could be reached

without discrimination by the act of the legislature.   But this act could be amended, modified or repealed by the same power which passed it; therefore, any change must be placed beyond the reach of the legislature.   This was plainly the object of section 1, article 17, and the only object.   The court below carries it further, and holds that " between any points within the state " means through, under or over any city within the the state without its consent, notwithstanding the plain inhibition of the act of 1868.   Whether the legislature in the exercise of its sovereignty, could, by express language, grant to railroad corporations, the right to occupy the streets, lanes and alleys of a municipal corporation without the consent of the latter, is not involved in the issue before us and we intimate no opinion thereon.   What we do decide is, that the implication from the constitutional provision is too far fetched ; it is more than doubtful; it reaches into the conjectural, goes entirely too far; if carried to its legitimate conclusion, then a railroad can be run through any burial ground, place of public worship or dwelling house from which they were excluded by the general railroad act of 1849.   The learned counsel for appellee does not shrink from the conclusion the reasoning of the court below fairly leads to, for he says in his printed argument, after giving the same constitutional interpretation :

" We must conclude, therefore, that the defendant railroad company has the right to build its line between any two points in the state without limitation by the courts or individuals or restrictions in any degree whatever, except that residing in the discretion of its board of directors."

While one object of the constitution probably was to encourge competition between carrying corporations, it just as plainly sought to promote another object, that is, by the prohibition of all local legislation to encourage self-government by the people under general laws providing for local control of their local affairs.   It would require a very plain mandate of the constitution to move us to interpret the section in question, as one practically handing over to railroad corporations the authority to control, occupy and obstruct the streets and highways of a great city, in disregard of the convenience of citizens. While the interest of the carrying corporation and the municipal one are not in themselves antagonistic, they may easily be-

come so by selfishness and indifference to each other's rights. It is to the interest of the citizen that his city should grow and expand; with its growth commercially and industrially the railroad thrives. This, however, is only sound theory; in practice, the railroad without regard to the city very often assumes that its only interest is to make money for its stockholders. It is, therefore, of the utmost importance to the well-being of the city, that it should control its means of local business and social communication. In no reasonable interpretation of section 1, article 17 of the constitution, having regard to the legislation then existing and other parts of the same instrument, can we see that it intended, with the act of 1868 plainly before the convention, to take away from the municipal government the control of its streets and highways as argued by appellee and decided by the court below.

The decree is therefore reversed, the bill reinstated and injunction directed to issue as prayed for.