# Kennedy et al. v. Rothrock Co., Inc., Appellant.

*Contracts—Corporations—Promissory notes—"Cash"—Evidence —Oral agreement with defendant's president—Exclusion—Inconsistent statements in charge—Failure of counsel to correct—Actions—Misjoinder—Items claimed by use-plaintiff and legal plaintiff joined—Motion in arrest of judgment—Verdict—Waiver—Interest—Allowance of interest for greater period than claimed— Practice, C. P.—Declaration treated as amended.*

1. Where a corporation has agreed to pay certain notes out of money realized from the sale of its capital stock for cash, the company is bound to pay the notes where it appears that it has sold enough stock to pay the notes in full, either for cash or for promissory notes, which were forthwith discounted for cash, the contract distinguishing stock sold for cash from that issued in exchange.

2. One who contracts to lend his credit to another is not prohibited from transferring or disposing of his property unless he has so agreed, at least where it does not appear that the transfer was made to avoid the obligation.

3. In an action against a corporation on its promissory notes and written contract, the court properly refused to admit in evidence an alleged written contract between plaintiff and defendant's president individually for the purpose of modifying the contract in suit with reference to the application of money arising from the sale of stock.

4. An alleged inconsistency in the charge is not ground for reversal where it appears that the inconsistency did the defendant no harm and that the court inquired of counsel at the end of the charge whether there was anything else which they desired him to say to the jury and counsel did not point out the alleged inconsistency.

5. Where an affidavit of defense was filed, a plea in abatement was entered and the general issue was pleaded together with a special plea of set-off, in none of which was complaint made that there was any misjoinder of actions, it was too late after the verdict to complain of such alleged misjoinder by way of a motion in arrest of judgment, particularly where it did not appear that defendant was prejudiced in any way by the alleged misjoinder items claimed by use-plaintiff and legal plaintiff were joined.

6. Where the statement of claim asked for interest from December 4, 1915, but interest was allowed from December 4, 1914, from which date interest was due, the declaration may properly be treated as amended to agree with the judgment on the verdict.

*Practice, Supreme Court — Statement of questions involved — Matters not included.*

7. A matter not included in the statement of questions involved will not be considered by the Supreme Court.

Argued March 23, 1918. Appeal, No. 305, Jan. T., 1917, by defendant, from judgment of C. P. Blair Co., Oct. T., 1917, No. 95, on verdict for plaintiff, in case of E. J. Kennedy and J. S. Ginter, Cashier Farmers' and Merchants' National Bank, Tyrone, Pa., now for use of E. J. Kennedy, v. E. W. Rothrock Co., Inc., a corporation chartered under the laws of the State of Delaware. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Assumpsit on promissory notes and written contract. Before BALDRIGE, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $4,712.90 and judgment thereon. Defendant appealed.

*Errors assigned* were in refusing defendant's motion in arrest of judgment, instructions to the jury, rulings on evidence and answers to points.

*Wm. L. Pascoe,* with him *Albert G. Pascoe,* for appellants.—Defendant's motion in arrest of judgment should have been granted: Fawcett v. Fell, 77 Pa. 308; Wolf v. Hostetter, 182 Pa. 292, 294; Locke et al. v. Daugherty et al., 43 Pa. 88; McNulty v. O'Donnell, 27 Pa. Superior Ct. Reports 93; Strohecker v. Grant, 16 S. & R. 237, 241; Bunting's Admrs. v. Camden and Atlantic Railroad Co., 81 Pa. 254, 256; Yankolovitz v. Wernick, 20 D. R. 223; Del. Div. Canal Co. v. Com., 60 Pa. 367; Com. v. Duff, 7 Pa. Superior Ct. 415.

The trial judge erred in refusing to permit defendant to prove a contemporaneous agreement between E. J. Kennedy, one of the plaintiffs, and E. W. Rothrock individually, which was an inducing cause for making the agreements on which the action is brought: Potter v. Grimm, 248 Pa. 440, 445, 446.

The trial judge erred in refusing to allow proof by defendant of the plaintiff Kennedy's breach of the agreement in suit, by fraudulent dispositions and concealments of his property, with intent to render himself irresponsible as an endorser: Newcomb v. Brackett, 16 Mass. 162; Seipel v. International Life Ins. & Trust Co., 84 Pa. 47.

*J. F. Sullivan,* with him *Richard Gilbert,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, June 11, 1918:

By written agreement of December 3, 1914, E. W. Rothrock Co., a Pennsylvania corporation, sold all its capital stock and property to "E. W. Rothrock Co., Inc.,"

a new (Delaware) corporation, for $26,800, payable in 268 shares of stock of the latter and the assumption of the debts of the former company in the amount of $31,-204.43, such stock to be transferred as follows: One hundred shares of preferred stock of the Pennsylvania corporation in exchange for the same number of shares of like stock of the Delaware corporation, each of the par value of $100, and, in addition, 168 shares of the common stock of the latter to be divided pro rata among the holders of the common stock of the former. The new corporation was capitalized at $100,000, and the old at $15,000.

Subsequent to the arrangement just outlined, but on the same day, E. W. Rothrock Co., Inc.,—hereinafter called the Delaware company—entered into a written agreement with plaintiff, E. J. Kennedy, who held thirty-five shares of the capital stock of the Pennsylvania company, and was about to receive, in exchange, the same number of shares of preferred stock of the new corporation, whereby it was agreed (a) that the Delaware company would purchase these thirty-five shares for $3,500, payable in seven notes of $500 each, dated December 4, 1914, with interest, the first maturing one month thereafter, and one falling due each succeeding month; (b) that the Delaware company would give its notes for $9,100, payable at such times as could be arranged with the then holders of $9,100 in notes of the Pennsylvania company, upon which Kennedy was either accommodation maker or endorser, as new obligations to lift these old ones; (c) that he, Kennedy, would "use his best endeavors to have the present owners of the nine thousand one hundred dollar notes exchange the same and accept in payment thereof the notes of [the Delaware company]" and that he would "endorse and renew his endorsements of all notes from time to time, so long as the contract and agreement [was] fairly carried out by the [Delaware company] ......"; (d) that the Delaware company would pay the aforesaid $3,500 of notes

given for Kennedy's stock, and the obligations for $9,100, upon which he was to become endorser, "out of the money realized from the sales of its capital stock for cash," excluding the before-mentioned 268 shares, and fifty in addition, specially set aside for certain designated purposes; (e) that such money would be applied as follows: "The first $6,000 upon account of the outstanding bills of said Pennsylvania corporation, the next one thousand (1,000) dollars, half on said thirty-five hundred (3,500) and half on said nine thousand one hundred (9,100) dollar notes to said E. J. Kennedy; the next one thousand (1,000) dollars, on account of such bills; the next one thousand (1,000) dollars, half and half on said E. J. Kennedy notes as aforesaid; etc.," until all of the notes were fully paid.

In pursuance of this last mentioned agreement, the Delaware company delivered seven notes of $500 each to plaintiff for his stock, and the latter procured the holders of the old notes for $9,100 to take in lieu thereof like obligations of the new corporation; Kennedy thereafter signed and, from time to time, renewed his signature. upon the new notes for $9,100 until the banks refused further to accept him either as maker or endorser. Finally, suit for $1,000 having been brought on one of the latter obligations, judgment obtained and execution issued, Kennedy was compelled to pay that amount, with interest and costs, such note having been signed by him jointly with defendant corporation, he acting as an accommodation maker; after its payment, this obligation was duly assigned to plaintiff.

The first of the seven notes was paid, but those subsequently maturing were not; Kennedy brought this action of assumpsit against the Delaware company to recover the $3,000 yet due on these obligations, and, in addition, claimed the $1,000 which he had paid as accommodation maker, $342.50, due him on a check, and $300, for rent of premises occupied by defendant. All these items were sued for by Kennedy as legal plaintiff except

the one of a thousand dollars, which he claimed as use-plaintiff.

Defendant denied liability on the six five-hundred-dollar notes upon the ground that plaintiff, in February, 1915, had committed a breach of contract by transferring some of his property, resulting in the refusal of the banks further to accept his endorsements; which defendant alleged, in a general way, resulted in damage to it in the sum of $10,000. Defendant also averred that the capital stock available for the purpose, which it had sold to time of suit, would not aggregate sufficient, if applied as stated in the contract, to pay its obligations held by plaintiff, since the corporation had accepted notes, instead of cash, for a large part of such stock, some of which notes had not been paid.

The various issues of fact involved in the controversy were submitted to the jury, and, as shown by the verdict, were found against defendant; judgment was entered accordingly, and this appeal followed.

With reference to the stock sales, the court below was entirely correct in charging that, on the facts at bar, sales on notes, forthwith discounted, were to be treated as sales "for cash" within the meaning of the contract between plaintiff and defendant, which distinguishes stock sold for cash from that issued in exchange for stock of the old company and to accomplish certain other purposes therein mentioned. The agreement in question provides that the proceeds of such cash sales are to be applied, in the manner hereinbefore stated, to the reduction of defendant's various obligations to plaintiff. In disposing of its stock, upon several occasions defendant accepted notes, which were forthwith discounted for cash. Under the circumstances, it would work grave injustice to permit such a subterfuge to delay the enforcement of this company's contractual obligations; but it is not necessary to rest upon that ground the affirmance of the present judgment, for there is ample evidence upon the record to prove that, at the time of this action, defendant

had sold for actual cash enough stock fully to pay the notes in suit.

As to the question of the first breach of contract, there is evidence sufficient to sustain a finding that, in February, 1915, the Delaware company refused to pay the note of $500 then accruing, at the same time notifying plaintiff it would not meet any more of such obligations, and he would have to sue thereon; with this evidence believed by the jury, as the verdict indicates it was, a breach was proved against defendant; and plaintiff's testimony shows that, upon the date in question, the latter was not in default as to his promised endorsements on the notes for $9,100.   Defendant contends, however, that plaintiff was in default in the respect last mentioned, in that he transferred property to such an extent as to impair his financial credit; and it complains because the trial judge refused testimony concerning these alleged transfers.   We see no error in the rulings of the court below upon the subject in hand; there is nothing in the agreement between the parties to prohibit plaintiff from transferring or disposing of his property, and, in addition, it appears that Kennedy attempted no such assignments or transfers until after the Delaware company's refusal to pay the note due him in February, 1915, that is, until after defendant's breach of contract.   We have read the authorities cited by appellant as applicable to this branch of the case, but none of them rules the facts at bar.

In one of its assignments, appellant complains because the court below refused to allow in evidence an alleged written contract between plaintiff and E. W. Rothrock individually, which the latter claims, in effect, modified the contract in suit "with reference to the application of money arising from sales of stock."   We see no error in this ruling; if there was any breach of the terms of this collateral agreement, the damages accruing therefrom may, perhaps, be recovered by Rothrock personally, but the court below was right in holding that such breach

could not affect the questions involved in the present suit.

Another assignment complains of an alleged inconsistency between a part of the charge, dealing with plaintiff's right to regain the amount paid by him on the before-mentioned note of $1,000, and a point covering the same item. It appears the trial judge said that, if Kennedy had to pay this note of $1,000, "then he would be put in the position of the bank" and "would have the right to recover the amount the bank collected from him"; but, later on, in answer to the point, the jury was plainly told that plaintiff could not recover "anything" upon the item of $1,000, unless he "proved to the satisfaction of the jury," by the weight of all the evidence in the case, that he had, in all particulars, lived up to his agreement with defendant. It is quite plain this inconsistency could have done defendant no harm. In the first place, plaintiff paid the note for $1,000, and might have had the judgment thereon marked to his use (Carnegie Nat. Bk. v. Seibel, 255 Pa. 473) ; but he preferred to include the item in his present suit. Next, as already indicated, the verdict comprehends a finding that defendant, and not plaintiff, was the party in default; and the last thing said to the jury, upon the subject of this note, was the affirmance of the point to the effect that there could be no recovery unless plaintiff proved "by the weight of the evidence" that he had not breached his contract. Finally, it was the duty of counsel to call the court's attention to the alleged inconsistency, when the trial judge, after answering all points, asked, "Is there anything else, gentlemen, you desire me to say to the jury." We see no merit in this assignment.

The assignment most strenuously insisted upon alleges that the court below erred "in overruling defendant's motion in arrest of judgment." In this connection the complaint is of a misjoinder of actions. The suit was instituted in December, 1915. An affidavit of defense was filed, a plea in abatement entered, the general issue

pleaded, and then defendant, by leave of court, filed a special plea of set-off. In none of these, however, did it suggest a misjoinder of actions, or complain because plaintiff was endeavoring to recover one of the items in suit as a use-plaintiff, while he claimed the others as legal plaintiff. After trial, defendant for the first time raised the objection in question. We cannot perceive in what manner the defendant was prejudiced by the so-called misjoinder, and we agree with the learned court below that, after full notice of the cause of action in plaintiff's statement of claim, defendant having "filed his affidavit of defense, entered a special plea, and had a fair trial, it is now too late [for it] to raise the objection that there was a misjoinder": Whitney v. Haskell, 216 Pa. 622, 628, and cases there cited.

Another matter calls for notice. Defendant contends that plaintiff recovered too much interest. The declaration asks interest only from December 4, 1915; but, as a matter of fact, on the bulk of the claims in suit, it was actually due from December 4, 1914, and the special verdict shows an allowance thereof from that date. Under the circumstances, the declaration might be treated as amended to agree with the judgment on the verdict (Passenger C. L. Ins. Co. v. Birnbaum, 116 Pa. 565, 572; Fonder v. Rosenstein, 53 Pa. Superior Ct. 161, 165; Wilson v. Fullman Co. (No. 1), 65 Pa. Superior Ct. 499, 507); but it is not necessary to follow this course, for, since appellant's statement of "questions involved" makes no reference to the matter of interest, that subject is not properly before us, and need not be considered: Willock v. Beaver Valley Railroad Co., 229 Pa. 526, 530; Smith v. Lehigh Valley R. R. Co., 232 Pa. 456, 462; Pramuk's App., 250 Pa. 45, 51; Vulcanite Paving Co. v. Philadelphia (No. 1), 252 Pa. 600, 601-2; Spang v. Mattes, 253 Pa. 101, 103; Hopkins v. Tate, 255 Pa. 56, 62.

The assignments are overruled and the judgment is affirmed.