Healey *v.* Hudson Coal Company, Appellant.

Argued March 7, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Rudolph S. Houck,* with him *John P. Kelly* and *Thomas L. Ennis,* for appellant.

*Roy B. Pope,* with him *E. F. McGovern,* for appellee.

Opinion by Parker, J., April 13, 1938:

The question raised by the appellant in this workmen's compensation case is whether a lieutenant of police, an employee of the defendant coal company, was in the course of his employment at a time when he suffered accidental injuries which resulted in his death, where the employee was not on the premises of the employer when the accident occurred. The referee, the board, and a common pleas court, in turn, held correctly, in the opinion of all of us, that the employee was so engaged and that the claimant is entitled to compensation for the death of her husband.

In this Commonwealth, contrary to the rule in some other states, the Workmen's Compensation Act does not give a right of compensation for all injuries arising out of the employment. The statute under which this claim is made requires that the injuries, not occurring on the premises of the employer, be sustained while the employee is "actually" engaged in the furtherance of the business or affairs of his employer, and "actually" means "as an actual or existing fact" and does not mean "constructively" engaged: *Maguire v. James Lees & Sons Co.*, 273 Pa. 85, 88, 116 A. 679. Where compensation has been allowed for injuries occurring off the premises, the decisions show that the employee sustained his injuries while actually engaged in some as yet incompleted business of his employer: *Palko v. Taylor-McCoy C. & C. Co.*, 289 Pa. 401, 404, 137 A. 625.

Whether one was injured in the course of his employment, as that phrase is used in the act, is a question of law and, as such, open to review: *Callihan v. Montgomery*, 272 Pa. 56, 115 A. 889. No general formula has been developed which will enable us to determine readily whether an accident off the premises occurred in the course of employment even though the elementary facts

are not in dispute. Experience has shown that many cases involving this question must be disposed of on their own peculiar facts and the question is frequently, as it is here, a reasonably close one.

At the first meeting before the referee, the parties entered into a written stipulation intended to cover all of the essential and material facts. We will summarize such of the admitted facts as are relevant to the disputed question. William J. Healey was fatally injured on February 19, 1934, in a collision on a public highway between a motor car in which he was riding and another car, when he was travelling from defendant's Lance Strippings, Larksville, Pennsylvania, to his home in Miners Mills, Pennsylvania. Decedent for some time had been employed by defendant as a lieutenant of police, was paid a monthly wage, and "at all times he was subject to call to duty and could be assigned to police duty at any time for the Company in Luzerne and Lackawanna Counties." He had been appointed at the instance of the defendant a deputy sheriff for those counties. The company had extensive coal operations at different locations in those counties and "under his contract of employment" with the company Healey "operated from his home at 5 S. Hudson Avenue, Miners Mills." When he travelled by trolley in going to or returning from a location, he was required to pay the car fare for the first car zone. If it was necessary to travel a greater distance than one trolley fare, the company paid the excess fare. For about five weeks prior to his death the employee had been assigned to the Lance Strippings, or Loree Colliery, and worked five nights a week from 6 P. M. until 6 A. M. the following morning. He had been engaged for twelve hours during the night preceding the accident at those premises and at 6 A. M. started for his home by the most direct and customary route, and when he had travelled

a distance less than that measured by one trolley fare the accident occurred.

When the case reached the board a dispute arose as to the meaning of the stipulation that Healey "operated from his home." The board then remanded the record to the referee "for further hearing and determination." From this testimony the fact finding body could have found that throughout his employment it was among decedent's duties to police the various properties of the defendant, investigate the circumstances connected with offenses involving breaches of the peace and the destruction or larceny of property of the defendant, obtain evidence and attend hearings in which the company was involved as prosecutor. The defendant was called at his home by his superiors during all hours of the day and night, sometimes once a week and at other times three times during a day. Even when he was employed during the night at a particular location he would be required at times during the day to attend hearings before magistrates, protect the pay roll of the company, and go to places in the two counties where strikes were in progress. The calls were so frequently made that the decedent installed a telephone in his own premises for the purpose of receiving and answering such calls. He was required to be available during all hours when there was any trouble or disturbance in the operation of the mines, and in going to and from his work it was his duty to be on the lookout to see whether any damage was being done to the company's property or property of the company was being molested or carried away.

These facts taken as a whole show that Healey was engaged in policing the extensive properties of defendant in two counties; that he was at all times subject to call for emergency duty and was in fact called frequently for such emergency duties; that he was paid a month-

ly salary and compensated for travelling expenses; that no barracks or similar headquarters were maintained where he received orders or from which he, as a police officer, or his associates, departed to perform their police duties; and that in going to and returning from a location he was required to watch for occurrences affecting the defendant. It may well be that no one of these facts standing alone would have been sufficient to sustain a finding that Healey was in the course of his employment when he was injured, but when taken together and considered in the light of the stipulation they present a different picture.

The duties of Healey were not performed at a particular location, were not confined to fixed hours, and were not limited to the boundaries of the defendant's premises. The character of his employment was not like that of a miner or even a policeman who might work at one location at one time and again at another place. His arena extended to all the properties of defendant in two counties and his actual work was performed on and off the defendant's premises. If his sphere of action had been limited to the premises, even though he was a policeman a different question would have been presented. In addition, when Healey left a particular property and before he reached home his work for the company was not terminated. He was still actually engaged in the protection of its property wherever it might be in either of the two counties.

The question then naturally arises as to when Healey began and ceased to be actually engaged in furthering the interests of the defendant. While decedent had been assigned primarily to one colliery for five weeks prior to his death, this was not sufficient to change the character of his employment for he still had other duties to perform. In fact he was called out for strike duty, to guard the pay car and other outside duties.

Just as in the case of a travelling salesman, we must frequently search for the line beginning or ending the employment at some other point than the boundaries of a particular premises. Not only could a reasonable and fair mind conclude that Healey began and ended his employment when he left his home, but the parties by written agreement so interpreted the facts when they stipulated that William Healey "operated from his home." Such interpretation is consistent with all of the evidence and is of great force when we consider its source. It is, therefore, our conclusion that the fact finding body had sufficient evidence to warrant a conclusion that Healey's duties began when he left his home for the purpose of performing duties in the scope of his employment and ended when he returned there or otherwise departed from his course by embarking on business foreign to that of his employer.

We have reviewed the evidence in a light favorable to the claimant as we are required to do since the referee and board are the fact finding bodies and have found for the claimant: *Zbirowski v. John T. Lewis & Bros. Co.*, 130 Pa. Superior Ct. 222, 196 A. 606; *Franks v. Point Marion Bridge Co.*, 128 Pa. Superior Ct. 269, 193 A. 421. As there was sufficient evidence to sustain the elementary facts and conclusions, we are constrained to affirm the judgment entered by the court below.

Judgment affirmed.