Edmiston *v.* Wolf, Sheriff et al., (et al., Appellant.)

Argued October 24, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*George G. Patterson,* for appellant.

*J. Colvin Wright,* for appellee.

OPINION BY RHODES, J., December 20, 1938.

The question in this workmen's compensation case is whether deceased was killed in the course of his employment as a special deputy sheriff. A petition was filed by the widow of deceased on behalf of herself and a minor daughter. After a hearing, the referee made an award. On appeal to the Workmen's Compensation Board the referee's seventh finding of fact was modified, and the award affirmed with one other modification not material here. Exceptions to the action of the Workmen's Compensation Board were dismissed by the court below, and the award affirmed. The insurance carrier has appealed.

The referee and the board found that deceased was employed by the sheriff of Blair County as a deputy. This finding together with the referee's seventh finding of fact as modified by the board are the ones material to this appeal. The seventh finding so modified reads as follows: "That on Friday, May 31, 1935, Cloyd Edmiston was notified by John Harvey, acting Sheriff of Blair County in the absence of George H. Wolf, Sheriff, to report to the Sheriff's office at Hollidaysburg, Pa., on Saturday morning, June 1, 1935, to work as deputy sheriff. That in pursuance of such notification, Cloyd Edmiston reported June 1, 1935, and was given a number of Defendant's Notices of Sheriff's Sales to post throughout the County. Mr. Harvey, the Acting Sheriff,

also instructed him to go to the home of Mrs. May C. Trask and Miss Smith to inquire when they were going to move. An eviction writ for the same premises had expired several days before, but plaintiff's attorney had instructed the Sheriff to obtain possession of the premises as peaceably as possible, and the Sheriff had undertaken to do this. Cloyd Edmiston, in pursuance of his duties as deputy sheriff proceeded to serve the notices as authorized on Saturday, June 1st. On Monday morning, there being a session of Court, Cloyd Edmiston acted as deputy sheriff there in bringing prisoners to and from the jail and Court House. On Monday afternoon, June 3, 1935, still having some writs to post in the pursuance of his duties as deputy, and in pursuance of his instructions from John Harvey, Acting Sheriff, Cloyd Edmiston proceeded to the Trask home to notify Mrs. May C. Trask and Miss Smith, and to inquire when they were going to move. That while delivering said message in pursuance of his instruction from the Acting Sheriff, Cloyd Edmiston was shot by Mrs. Trask, receiving injuries from which he died later that day."

We are of the opinion that there is competent testimony to support the foregoing findings. George H. Wolf, Sheriff of Blair County, testified that he was out of the county from May 30, 1935, until June 4, 1935. During that time he left his chief deputy, John C. Harvey, in charge of his office. He instructed Harvey to employ deceased as a special deputy if one was needed.

Harvey testified that pursuant to those instructions he employed deceased as a special deputy on June 1st, which was a Saturday. On that day deceased was engaged in posting notices of sheriff's sales throughout the county. His employment was for no limited time. Harvey further testified that there was in the office of the sheriff a writ of possession, in which Mrs. Trask was the defendant, which had expired on the fourth

Monday of May, which was May 27th. Harvey said that he had been instructed by the attorney for plaintiff in the writ that he wanted an eviction only as a last resort, and that he was to persuade Mrs. Trask to move peaceably if possible. It appears from Harvey's testimony that he had expected to call at the Trask home on the Friday preceding the employment of deceased, but did not get there. Accordingly, he instructed deceased that "if he was in that vicinity to stop and inquire when they were going to move." When the deputy sheriffs left the office on Saturday to serve the sheriff's sale notices, Harvey said to them: "We will have to keep going all day today and if necessary up into this evening to get all these out ......; also we will have a session of court [on Monday] which will take two men. ...... I will see you again Monday morning." On the following Monday morning deceased reported at the courthouse, where he assisted during a session of court.

After the death of deceased some papers where taken from his clothing and returned to the sheriff's office. These papers seem to have been four in number. Harvey testified that three of them were unserved sheriff's sale notices, which he had given to deceased. Harvey then served them himself. The fourth, Harvey stated, was a sheriff's billhead on which an address was written; and when asked whether the address written thereon was that of Mrs. Trask he said, "It could have been, for all I know. No, I don't remember." This fourth paper he destroyed.

At the hearing it was agreed by counsel for the parties that deceased "died on Monday, June 3, 1935, at the Altoona Hospital, Altoona, Pennsylvania, as the result of a gunshot wound received by him about one-thirty P.M. of that date at the premises of Mrs. May Trask, 2214 Fifteenth Street, Altoona, Pennsylvania." Whether the evidence supported the finding that Mrs.

Trask was the person who fired the shot is immaterial, in our opinion, in view of the foregoing admission.

The evidence supports the conclusion that deceased was still employed by defendants, and in the course of his employment at the time of his death. Defendants made no attempt to show that the wound was self-inflicted, or that it was caused by one who intended to injure deceased because of reasons personal to him and not directed against him as an employee or because of his employment, and as to these matters defendants had the burden of proof. Workmen's Compensation Act of June 2, 1915, P. L. 736, art. 3, §301, 77 PS §§411, 431; *Tuttle v. Holland Furnace Co.*, 111 Pa. Superior Ct. 290, 169 A. 462; *Schueller v. Armour & Co. et al.*, 116 Pa. Superior Ct. 323, 176 A. 527. We have said repeatedly that it is the exclusive function of the compensation authorities to find facts, whether from direct or circumstantial evidence, and the inferences therefrom (*Dunphy v. Augustinian College of Villanova et al.*, 129 Pa. Superior Ct. 262, 195 A. 782) ; that, unless it can be said that there is no competent evidence to support the findings and conclusions of the referee and board, they cannot be disturbed (*Johnson v. Valvoline Oil Co. et al.*, 131 Pa. Superior Ct. 266, 200 A. 224) ; and that where the fact-finding bodies have found for claimant the record must be reviewed in the light most favorable to her (*Healey v. Hudson Coal Co.*, 130 Pa. Superior Ct. 462, 198 A. 684).

Appellant contends that deceased had been discharged prior to his death, and relies upon the testimony of Harvey who stated that, after the session of court terminated on Monday morning, he told deceased, "that winds her up or finishes it, or words to that effect." He testified also that on the same morning, during a lull in the court proceedings, he had asked deceased whether he had seen the Smiths or Trasks relative to when they were going to move. When deceased replied that he had not, Harvey testified that he said to

deceased, "Forget about it; I will get up that way myself." We think that these expressions are not so unequivocal as to require us to say as a matter of law that deceased's employment was terminated thereby. Harvey denied his alleged admissions that deceased was still working and performing his assigned duties when killed. He was contradicted by several witnesses. Credibility of the witnesses was for the fact-finding bodies. It was the prerogative of the compensation authorities to give his testimony such consideration as it might deserve, and to accept or reject it in whole or part accordingly. *Zbirowski v. John T. Lewis & Bros. Co.,* 130 Pa. Superior Ct. 222, 196 A. 606.

Appellant contends further that deceased was not in the course of his employment at the time he was fatally wounded because his visit to the Trask home was not authorized by any writ, and was made pursuant to a voluntary undertaking on the part of Harvey, the chief deputy sheriff, to secure possession of the property peaceably and without a formal eviction. In support thereof it cites: *Zenker v. Zenker et al.,* 93 Pa. Superior Ct. 255; *Boal v. State Workmen's Insurance Fund et al.,* 127 Pa. Superior Ct. 237, 193 A. 341; *Freeman v. Salem Reformed Church et al.,* 125 Pa. Superior Ct. 367, 190 A. 159; *Paulin v. Williams & Co., Inc. et al.,* 122 Pa. Superior Ct. 462, 186 A. 415, affirmed, 327 Pa. 579, 195 A. 40. In the *Zenker Case,* 93 Pa. Superior Ct. 255, at page 257, this court said, in an opinion by the present President Judge: "It seems clear to us that the act contemplates the insurance of an employer with respect to the business which he is carrying on—not with respect to roving errands wholly disconnected and apart from the business which the employer is conducting and with respect to which he secures compensation insurance. ...... If an insurance carrier is to be held liable for compensation to an employe as the result of an 'injury by an accident in the course of his employment' it should at least appear that the injury, if it

occurred off the employer's premises, had some connection or was concerned in some manner with the business of the employer whose insurance the carrier undertook. The connection or interest need not be close—the injury need not arise out of the employment—but when the accident occurs off the employer's premises, the errand or work of the employe must bear some relation to the business, enterprise, trade or profession whose operations were insured."

The instant claim is not defeated by the rules quoted. The visit of the deceased to the Trask home was not a private affair of his own. As the board stated in its opinion, there is no evidence showing that he had any personal motive in going there. On the other hand, the object of his call bore "some relation to the business, enterprise, trade or profession whose operations were insured"; and it was not a roving errand wholly disconnected and apart from the business of his employer. We cannot close our eyes to the fact, so well known to lawyers generally, that in the conduct of his office the sheriff is often called upon to perform acts that are not always strictly pursuant to a writ. In all of the cases cited by appellant the employee was engaged in an activity which had no connection with the employer's business.

Since we think the findings of the compensation authorities are supported by competent evidence aside from that to which objection was made by appellant, and to which error was assigned on this appeal, it becomes unnecessary to discuss those assignments. The conclusion that deceased was killed in the course of his employment properly followed from the facts so found.

The order of the court below is affirmed, and the record is remitted to that court for the purpose of entering judgment for claimant upon the award.