Opinion by
 

 Rhodes, J.,
 

 In this workmen’s compensation case the referee, the Workmen’s Compensation Board, and the court below decided that claimant was entitled to compensation. Defendant’s insurance carrier has appealed from the judgment entered on the award.
 

 Appellant in its brief has failed to examine the evidence in the light most favorable to claimant in whose favor the award was made and judgment entered thereon. Claimant is entitled to have the evidence read in the light most favorable to him, and he must be given the benefit of every possible inference therefrom.
 
 Olsweski v. Lehigh Navigation Coal Co.,
 
 145 Pa. Superior Ct. 193, 198, 20 A. 2d 874. Besides, it must be borne in mind that the board is the final fact-finding tribunal in compensation cases, and if its findings of fact are based on legally competent and substantial evidence they are conclusive, and our courts have no power to weigh the evidence and revise those findings or reverse the final action of the board.
 
 Corrento v. Ventresca et al.,
 
 144 Pa. Superior Ct. 358, 362, 19 A. 2d 746. This is true although there may be competent evidence in a case which, if believed, would justify and support different findings.
 

 It was established by competent and substantial evidence that on or about May 31,1938, claimant, employed
 
 *351
 
 as a laborer by defendant company, suffered an injury by accident in the course of his employment. Claimant was loading a truck with heavy stones on the day of the accident. As he was picking up a stone at the end gate of a truck, another employee threw a large stone weighing about 65 pounds onto the half-filled truck. This stone rolled off the truck and struck claimant on the left side of the head in the parietal region. As a result he was dazed, and was then assisted to a resting place by another employee and the foreman, where he remained for about fifteen minutes. He resumed his work and continued for the remainder of the day. A lump about half the size of an egg appeared where he had 'been hit, and a sore spot developed and remained for about a week. He was employed by defendant company about nine days, from May 28, 1938, to June 6,1938.
 

 In November, 1938, about five months after his accidental injury, claimant was suddenly seized with convulsions, and was taken to the Bradford Hospital, where he was attended by Dr. C. E. Cleland. These convulsive seizures continued to occur — about three a week, and they sometimes rendered him unconscious. Dr. Cleland consequently recommended an examination at the St. Francis Hospital, Pittsburgh, Pa. On claimant’s return from the latter hospital the attacks continued, and he was sent back by his doctor. There an operation was performed on the skull where the stone had struck him. His condition improved, but despite medical attention the convulsive seizures have persisted intermittently. There is no dispute that claimant is totally disabled as the result of these attacks, and the compensation authorities so found.
 

 The principal question before us is whether there is competent and substantial medical testimony in the record to support the finding of the referee and the board that claimant’s present disability was caused by
 
 *352
 
 the accidental injury sustained in the course of his employment with defendant company. See
 
 Flood v. Logan Iron & Steel Company et al.,
 
 145 Pa. Superior Ct. 206, 212, 20 A. 2d 792.
 

 Dr. Cleland, claimant’s personal physician, made various examinations and tests to determine the cause of his condition. When asked what causes there were for claimant’s condition, Dr. Cleland said: “Local injury to the brain from trauma to the head, vascular blood clot — you might classify that as injury from within the head, syphilis, brain tumor, and that’s about all.” His opinion as to the sole cause of claimant’s condition is incorporated in his answer to the following question: “Q. What, in your own opinion, doctor, from the history of the case, your observation of this man, and so forth, is the trouble with him today? A. Cortical atrophy from a blow on the head. I have reasons for that. The area of atrophy which is involved and which manifests itself by his seizures, lies directly beneath the area of the blow which he states he received on the head while working for the Holmes Construction Company, and the other causes for this condition have been ruled out.” On cross-examination Dr. Cleland further testified: “Q. You didn’t say anything about the vascular blood clot. Have you ruled that out? A. As a matter of fact, it is both those factors combined, because when you get a blow on the head you bruise the brain and destroy blood vessels, causing clotting of the 'blood in the vessels, and those things combined cause this atrophy and shrinking and hardening of the brain....... Q. Doctor, if you are correct in your diagnosis of this case, don’t you think this man, suffering the injury he claims to have suffered, and in the way he got it, that he would not go on for a matter of five months without showing some effect of it? A. No. In fact, that is one of my main reasons for believing this injury comes from the accident, because the text books state that such a condition
 
 *353
 
 will develop four, five, or six months after the accident itself, which makes this work out about right....... He did not have a seizure until the atrophy had progressed to a degree great enough to bring on a seizure.
 
 ......Q. Doctor, you think this condition, as found in this patient, is the result of a blow?
 
 A.
 
 Yes, sir.
 
 [Italics supplied.] ...... Q. So, without seeing [the brain], you are at quite a loss to testify as to just what the trouble is, aren’t you? A. No, I wouldn’t say that. It is an academic point, Mr. Nash. I know what’s the matter with the man, and I have signed statements from very reputable physicians who looked in there and saw it. Clinically, I know the man has Jacksonian epilepsy, and from the history of the case and from the conditions that are ruled out by a process of elimination, I arrive at a diagnosis of cortical atrophy, which is a pathological diagnosis and not a clinical one.”
 

 Dr. J. F. Grunnagle, a specialist in neuro-surgery, was also called by claimant. At the St. Francis Hospital claimant was under the care of Dr. Grunnagle and Dr. S. S. Allen. Dr. Grunnagle testified that a spinal air injection “revealed an atrophy, which is a shrinkage or scarring localized to the left parietal region of the brain.” This is the region where the stone struck claimant. Upon the second confinement in the hospital, the operation on the same region of the skull disclosed that “the brain was atrophic.” Dr. Grunnagle was of the opinion that the atrophy caused the seizures, but that it was inadvisable to incise this scar because of the grave danger involved. He further testified: “A. The most likely cause of the atrophy in a case given a previous history of trauma is the trauma. It is not always the case but the most likely cause. Q. In your opinion would that be the cause in this particular case, Doctor? A. I can’t say absolutely that it is but I think it is probable.” On cross-examination he testified: “Q. Doctor, you say that you cannot say definitely that—
 
 *354
 
 or ‘absolutely’ your word was — that trauma is the cause of this difficulty that this man suffers from? A. No, all I can say is that it is the most likely cause....... Q. And when you say that it is the most likely cause you mean that that is your best guess or your best judgment? A. That’s right. Q. But you cannot be certain? A. No.”
 

 Medical testimony is essential here; a causal connection between the original injury and claimant’s present disability must be shown by positive expert opinion evidence of such quality and quantity as to amount to more than a probability, conjecture, or guess.
 
 Coder v. Pittsburgh Des Moines Steel Co.,
 
 142 Pa. Superior Ct. 407, 411, 16 A. 2d 662. The medical expert must testify, in effect, that in his professional opinion the result in question came from the cause alleged.
 
 Vorbnoff v. Mesta Machine Co.,
 
 286 Pa. 199, 206, 133 A. 256;
 
 Elonis v. Lytle Coal Co.,
 
 134 Pa. Superior Ct. 264, 271, 3 A. 2d 995.
 

 While Dr. Grunnagle’s testimony standing alone may not meet the tests prescribed, and may therefore be insufficient to support the award
 
 (Fesenbek v. Philadelphia,
 
 144 Pa. Superior Ct. 99, 105, 18 A. 2d 448;
 
 Beck v. Franklin Glass Corp. et al.,
 
 136 Pa. Superior Ct. 204, 212, 7 A. 2d 600;
 
 Elonis v. Lytle Coal Co.,
 
 supra), it does have some probative value in view of the other evidence in the case
 
 (Moyer v. Branch Storage Co., Inc.,
 
 138 Pa. Superior Ct. 71, 77, 10 A. 2d 33). The testimony of Dr. Cleland, however, clearly measures up to the requirements which have been defined by our Supreme Court and this court, and his professional opinion is positive and unqualified that “the result in question came from the cause alleged.” Moreover, his opinion was expressed in a comprehensive and logical manner, which is amply disclosed by the quoted testimony.
 

 The convulsive seizures have totally disabled claimant, they are caused by cortical atrophy, and this is the
 
 *355
 
 result of his accidental injury sustained while in the course of his employment with defendant. There was no proof or intimation of any other head injury, and Dr. Cleland by process of elimination ruled out any other cause for claimant’s condition. These matters have been so conclusively established by the recited facts and the medical testimony that further discussion would be superfluous.
 

 It is argued on behalf of appellant that Dr. Cleland’s testimony cannot be considered, because, it is contended, his opinion was partially based upon Dr. Grunnagle’s finding as the result of the operation that claimant suffered from cortical atrophy. This argument is fallacious for two reasons. By process of elimination Dr. Cleland had arrived at a diagnosis of local injury to the brain from the blow. He also stated that in order to make a clinical diagnosis it was not necessary to see the brain itself. It is conceded that claimant has cortical atrophy in the area of the alleged injury. In giving his professional opinion Dr. Cleland therefore could incorporate into his determination the finding of cortical atrophy by Dr. Grunnagle, which is in the evidence and is uncontradicted. See
 
 McMinis v. Philadelphia Rapid Transit Co.,
 
 288 Pa. 377, 382, 135 A. 722 ;
 
 Rossi v. Hillman Coal & Coke Co.,
 
 145 Pa. Superior Ct. 108, 20 A. 2d 879;
 
 Yerko v. Clearfield Bituminous Coal Corp.,
 
 145 Pa. Superior Ct. 269, 21 A. 2d 97.
 

 We have often stated that the credibility of medical witnesses and the weight to be attached to the testimony of each are matters finally and exclusively for the Workmen’s Compensation Board, and where any conflicts appear in such experts’ theories or opinions it is for the board to decide which conclusion it will adopt.
 
 Coder v. Pittsburgh Des Moines Steel Co.,
 
 supra, pp. 411, 412;
 
 Swalm v. J. H. Brokhoff, Inc.,
 
 145 Pa. Superior Ct. 218, 223, 20 A. 2d 797;
 
 Yerko v. Clearfield Bituminous Coal Corp.,
 
 supra, p. 275.
 

 
 *356
 
 Appellant raises another question which is without merit. Claimant’s petition averred that the accident happened on “Wednesday, June 15, 1938.” Before claimant closed his case an amendment to the petition was allowed changing the date to “on or about Wednesday, May 31, 1938.” He then testified that the accident happened on or about the latter date. Defendant’s testimony indicated that claimant was not working for defendant on June 15,1938, but that he was working for defendant between May 28, 1938, and June 6,1938. The referee’s fourth finding of fact, affirmed by the board, that the accident happened “on or about May 31,1938,” was supported by competent and substantial evidence. The credibility of the witnesses was solely for the referee and the board.
 
 Edmiston v. Wolf, Sheriff et al.,
 
 134 Pa. Superior Ct. 7, 12, 3 A. 2d 177.
 

 Appellant further contends that section 315 of the Act of June 2,1915, P. L. 73;6, as reenacted and amended by the Act of June 21, 1939, P. L. 520, 77 PS §602, barred claimant’s claim for compensation, as the claim petition was filed on September 29, 1939, more than one year after the accident on May 31, 1938. The Act of 1939, §315, 77 PS §602, effective on July 1, 1939, and in force when claimant filed his petition with the board, provides, inter alia, that “all claims for compensation shall be forever barred, unless, within one year after the accident,......one of the parties shall have filed a petition” with the board. Under the reenacting and amending Act of June 4, 1937, P. L. 1552, §315, 77 PS §602, effective on January 1, 1938, and in force on the date of the accident, claimant had two years within which to file his petition. The limitation periods in the Act of 1937 and the Act of 1939 relate to matters of procedure, and are not confined to rights of action which accrued after their passage and approval.
 
 Seneca
 
 v. Yale
 
 & Towne Mfg. Co. et al.,
 
 142 Pa. Superior Ct. 470, 476, 16 A. 2d 754;
 
 Matkosky v. Midvale Co.,
 
 143 Pa.
 
 *357
 
 Superior Ct. 197, 199, 18 A. 2d 102. In these two cases it was held that the provision in the Act of 1937, which extended the period within which a claim petition hád to be filed from one year to two years after the accident, did not affect the substantive rights of the parties under the contract of hiring but only the procedure for their enforcement. Hence an employee whose injuries were sustained within a year prior to the effective date of the Act of 1937 could file his petition within two years from the date of the accident notwithstanding that at the time of the accident the one year limitation under the Act of 1915 was in force. Under the circumstances of the instant case, however, the one year limitation in the Act of 1939 cannot be pleaded for the purpose of barring claimant’s right to compensation. That act was approved on June 21, 1939, and became effective ten days thereafter. When the Act of 1939 was enacted, eleven months of the period within which claimant was required to assert his right of action, under the legislation in force at the time of his injury, remained. To require claimant to move within ten days after this act was approved by the Governor would be unreasonable, and it would be unconscionable to deprive claimant of compensation benefits in this manner. We are unwilling to say that the provision in the Act of 1939 automatically barred claimant’s right of action for compensation. In
 
 DeJoseph v. Standard Steel Car Co. et al.,
 
 99 Pa. Superior Ct. 497, at page 504, in an opinion by Judge Keller, now President Judge, we said: “Statutes of limitations are to be construed liberally and provisions in them which are retroactive in character will be upheld if a reasonable time is given the parties affected to pursue their remedy:
 
 Kenyon v. Stewart,
 
 44 Pa. 179.”
 

 The language of the quoted provision of the Act of 1939, 77 PS §602, would naturally make it apply to existing rights of action as well as to those accruing thereafter. See, also, 37 C. J. 697, §15. The period of
 
 *358
 
 limitation having been reduced from two years to one year by the Act of 1939, there must be a reasonable time allowed to exercise a substantive right which existed at the time of its enactment. Under the circumstances, the. reasonable time thereafter in which a claim petition may be filed is to be judicially détermined. Claimant cites and relies on section 502 of the Act of 1939, 77 PS §1602, which provides: “Nothing in this act shall affect or impair any rights of action which have accrued before this act shall take effect.” However, claimant filed his petition within sixteen months after the accident and within three months after the effective date of the Act of 1939, and this we conclude was within a reasonable time. See
 
 Heath v. Hazelip et al.,
 
 159 Ky. 555, 564, 167 S. W. 905.
 

 The second assignment of error which relates to notice to defendant employer, as required by sections 311, 312, 313 of the Act of June 2, 1915, P. L. 736, as reenacted and amended by the Act of June 4, 1937, P. L. 1552, 77 PS §§631, 632, 633, is not referred to in or comprehended by the statement of questions involved Therefore, we are not obliged to consider it.
 
 Kress House Moving Co. v. George Hogg Co.,
 
 263 Pa. 191, 195, 106 A. 351;
 
 Kennedy et al. v. Rothrock Co., Inc.,
 
 261 Pa. 580, 588, 104 A. 746. However, the actual knowledge of the occurrence of claimant’s injury on the part of the foreman was knowledge to the employer, and the equivalent of notice under the act.
 
 Uditsky v. Krakovitz,
 
 133 Pa. Superior Ct. 186, 188, 189, 2 A. 2d 525.
 

 All the assignments of error are overruled.
 

 Judgment is affirmed.