Perkasie Borough's Annexation Case.

Argued March 1, 1971, before President Judge Bow-
MAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MANDERINO, MENCER and ROGERS.

*Kenneth G. Biehn,* with him *Biehn & Thatcher,* for appellant.

*David A. Franklin,* with him *Townsend, Elliott & Munson* and *Smith & Wilson,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., July 30, 1971:

Appellant, East Rockhill Township, seeks to reverse an order of the Court of Common Pleas of Bucks County which approved the annexation of a portion of that township by the Borough of Perkasie. The Borough at argument raised what is in essence a motion to quash the appeal for lack of timeliness. Both the appeal on the merits and the motion to quash have been consolidated for argument and disposition. We dismiss the motion to quash and affirm the order of the court below.

Because of the involved time and incident sequence, we shall set forward the events which have precipitated this action as follows:

On *October 7, 1963,* certain freeholders of land in East Rockhill Township (Township) presented to the Borough Council of the Borough of Perkasie (Borough), at a regularly scheduled meeting, a petition requesting annexation by the Borough of 69.0528 acres comprising five parcels entirely within the Township and very small portions of two parcels partially within the Township (the remaining portions of these parcels already being part of the Borough). Five of these parcels were titled by husbands and wives as tenants by the entireties, one parcel was titled by Arthur D. Fretz and J. Richard Fretz with no other designation of ownership and the final parcel was held in the name of

Benjamin K. Hedrick and Walter Hedrick, copartners, t/a B. K. Hedrick and Son.

The petition dated October 7, 1963 contained the signatures of both spouses of four of the five tenancies by the entireties; the signatures of both owners of the Fretz tract, and; the signature "Benjamin K. Hedrick & Son by Walter Hedrick: for the Hedrick tract." Borough Council accepted the petition and directed that an annexation ordinance be prepared.

On *November 11, 1963,* at the next regular Borough Council meeting two of the husbands and their wives presented a declaration of withdrawal, requesting the removal of their names from the petition, asserting in support of their request that their signatures on the petition were the result of persuasion by its circulators and not the result of any conviction or belief that the annexation would be of benefit to the area. As a result of the withdrawal declaration and the requests of Township representatives, the proposed annexation ordinance was tabled until the next regular Borough Council meeting, December 9, 1963, at which time it was adopted.

*December 17, 1963,* the new ordinance was filed with the Clerk of the then Court of Quarter Sessions of Bucks County.

*January 15, 1964,* the Township, through its Supervisors, petitioned the court to review the propriety and legality of the ordinance. Thereafter, the Borough filed a motion with the court requesting the appointment of commissioners for this purpose in compliance with the Second Class Township Code, Act of July 20, 1953, P. L. 550, 53 P.S. §§67501 et seq.

On *February 6, 1964,* Judge MONROE, of the Court of Quarter Sessions of Bucks County, appointed a three-man commission which held a hearing on *August 12, 1964,* to take testimony on the propriety and legality of the annexation.

On *March 15, 1965,* the Commission filed a report recommending approval of the annexation.

*May 17, 1965,* the issue was argued before the court en banc.

*December 15, 1969,* the court affirmed the annexation ordinance.

*January 8, 1970,* the Township filed a petition for reargument, which was granted, acting as a supersedeas.

In *September 1970* the matter was again argued before the court en banc.

*October 2, 1970,* an order was entered denying the Township's motion to reconsider the approval of the ordinance.

*On October 28, 1970,* the Township took this appeal to this Court challenging the orders of December 15, 1969 and October 2, 1970. In compliance with the Commonwealth Court Rules, Judge GARB of the Court of Common Pleas of Bucks County, who was the author of the December 15, 1969 opinion, filed an opinion amplifying the order of October 2, 1970.

In its brief and argument, the Borough sought to quash the appeal, alleging that the Township had filed its appeal after the period for filing had expired. As of December 15, 1969, when the initial order of the court below was filed, the Second Class Township Code did not provide for an appeal of right from annexation orders. Appeals to the Supreme Court were by allocatur. *Palmer Township Annexation Case,* 416 Pa. 163, 204 A. 2d 760 (1964). The time limitation for filing an appeal was therefore "three calendar months from the entry of the order," as provided by the Act of May 19, 1897, P. L. 67, §4, 12 P.S. §1136.

In *January 8, 1970,* twenty-three days after the order of the court below, Judge GARB granted the petition for rehearing and entered an order of supersedeas which stayed the running of the appeal period pending disposition of the rehearing. *Merrick Estate,* 432 Pa.

450, 247 A. 2d 786 (1968); *Grosso v. Englert,* 381 Pa. 351, 113 A. 2d 250 (1955); *Woodward & Williamson's Assessment,* 274 Pa. 567, 118 A. 552 (1922). While the rehearing was pending, the Appellate Court Jurisdiction Act, Act of July 31, 1970, P. L.    , No. 223, 17 P.S. §§211.101 et seq., was enacted providing for appeals of right in annexation cases to Commonwealth Court. Section 502 of that Act provides for a thirty-day appeal period in all actions. The Borough contends that the present appeal was governed by the new limitation, and argues that the Township should have filed this appeal within seven days of the October 2, 1970 order—that being the part of the thirty-day period affected by the supersedeas. Since the appeal was filed twenty-six days after that order, the Borough contends that the appeal must be quashed. We do not agree.

"In DeJoseph v. Standard Steel Car Co. et al., 99 Pa. Super. Ct. 497, at page 504, in an opinion by Judge KELLER, . . . [the Superior Court] said: 'Statutes of Limitations are to be construed liberally and provisions in them which are retroactive in character will be upheld if a reasonable time is given the parties affected to pursue their remedy: Kenyon v. Stewart, 44 Pa. 179.'" *Kennedy v. Holmes Construction Co.,* 147 Pa. Super. 348, 357, 24 A. 2d 451 (1942). The language of section 502 is *not retroactive* in nature, but even *if* it were, "the reasonable time thereafter in which a [pending] . . . petition may be filed is to be judicially determined." We cannot conclude that the Township, in filing twenty-six days after the October 2, 1970 order, unreasonably delayed the filing of its appeal so as to have demanded that the appeal be quashed. The Township had two months and eight days left after the supersedeas in which to file with this Court. The appeal was timely; the motion to quash is denied.

As to the merits, Township raises four challenges to the approved annexation:

(1) the petition for annexation did not contain the required outline of courses and distances of the *Borough's* boundaries *before* and *after* the annexation;

(2) the petition did not contain signatures of the required majority of freeholders;

(3) the court below failed to make the required independent determination of legality and propriety prior to its appointment of the Board of Commissioners and;

(4) the proceedings were rendered null and void by the adoption of new annexation procedures in Article IX of the new Constitution of Pennsylvania, adopted April 23, 1968.

These contentions, neither individually nor collectively provide a valid basis for reversal.

I.  Requirement of a Before and After Boundary Plan

The Borough Code provisions for annexation by a borough of a portion of a second class township, Act of May 4, 1927, P. L. 519, 53 P.S. §§45411 et seq., require that the Borough file with the Court of Quarter Sessions of the County, "a plot showing the courses and distances of the boundaries of the Borough before and after such proposed annexation, : . ." 53 P.S. §45427. However, the Second Class Township Code provisions for annexation by a borough of a portion of a second class township, Act of July 20, 1953, P. L. 550, 53 P.S. §67501 et seq., do not require the filing of a before and after annexation boundary plan. The annexation, here in question, could have proceeded under either Code.

Appellant contends that although the procedure followed was that outlined in the Second Class Township Code, the annexation ordinance itself was adopted on the basis of the provision of the Borough Code. The Township would for this reason have us require the annexation to meet the provisions of both codes. We disagree.

While the annexation ordinance does contain the averment that it was adopted pursuant to the "provisions of the Act of May 4, 1927, P. L. 519, its supplements and amendments", this is the only indication that the Borough Code provided the basis for the annexation. As stated by the court below in its opinion of December 15, 1969: "It was apparently the impression of counsel on both sides that the proceeding was under the provisions of the Act of 1953 Second Class Township Code rather than the Borough Code. Upon the enactment of the ordinance by the Borough the ordinance was certified to the Court of Quarter Sessions pursuant to Section 2 of the Act of 1953 and also as required by Section 5 of the then applicable Borough Code, but apparently no notice was given to the County Board of Elections as provided by the latter act. Upon complaint filed by the township and motion by the borough a board of commissioners was appointed pursuant to Section 3 of the Act of 1953, the sum of $150.00 having been deposited with the petition under the provisions of Section 1 of the Act of 1953. As heretofore noted, the commissioners met, took testimony and rendered their report pursuant to the mandate of Section 4 of the Act of 1953 and the commissioners have been compensated pursuant to Section 8 of the Act of 1953. The procedures followed being consistent and in conformity with the Act of 1953, we find that the provisions of that Act are applicable to determine the propriety of the procedures followed in this annexation petition. Carnegie Borough Annexation Case, 408 Pa. 146 (1962) and West Conshohocken Borough Appeal, 405 Pa. 150 (1961)."

Borough contends that it enacted its ordinance pursuant to the Borough Code but the annexation proceedings were actually following the provisions of the Act of 1953. This is a prime example of confusion caused by the overlap of two Codes which prompted the change

in the Pennsylvania Constitution in 1968 by which annexation might be put into the voters' hands. It is clear, as Judge GARB has said in his opinion, that both Borough and Township proceeded under the Second Class Township Code. Therefore, Borough was not required to file a before and after annexation boundary plan with the courts.

## II. Requirement of the Signatures of a Majority of Freeholders

As stated by the court below: "Section 1 of the Act of 1953 provides that a majority of the freeholders in the proposed annexed territory shall petition the borough requesting the annexation. The foregoing section further provides that a majority in interest of owners of undivided interests in any piece of property shall be deemed and treated as one person for the purpose of ascertaining the number of petitioners. It is immaterial whether the Fretz property was held as joint tenants with rights of survivorship or as tenants in common because by virtue of the last noted provision of this act both such estates as well as estates by the entireties should be treated the same and counted as one person in each instance. [footnote] Shrewsbury Township Annexation Case, 81 York Legal Record, 149 (1968); Annexation of Lands in Mount Carmel Township, 41 D. & C. 2d 312 (Northumberland 1966); Annexation of Lands in Penn Township, 29 D. & C. 2d 718 (Snyder 1962). Therefore, it is required that no less than four freehold interests petition for this annexation if it is to succeed. [footnote]" With this we agree.

However, both the Borough and the Township disagree with the disposition of the signatures by the court below. The court permitted the withdrawal of the signatures two sets of spouses requested in the November 11, 1963, petition for withdrawal. The withdrawal petition was filed after the petition for annexation was submitted to Borough Council. The Borough

contends that the allowance of the withdrawals was in error. We agree.

Section 1 of the Act of 1953 states: ". . . the determination of the required number of petitioners shall be made *"as of the date the petition is presented to the borough. . . ."* (emphasis added) 53 P.S. §67501. The annexation petition was presented to the Borough October 7, 1963. At that time the signatures in question were validly affixed thereto. Therefore, absent a showing of fraud or misrepresentation, (*Lerten Appeal*, 168 Pa. Super. 516, 79 A. 2d 670 (1951)), the signatures must be counted for the petition.[1]

The court below relied on *Lerten Appeal, supra,* in fixing the withdrawal date which is the date when the *jurisdiction* of the tribunal attaches. It concluded "jur-

---

[1] " 'In those cases, in which jurisdiction has attached, the fact that several petitioners desire to withdraw their names, should be taken into consideration by the court; and, if, a sufficient number desire to withdraw, the court would not only be warranted in dismissing the petition, but in many instances should do so, on the ground, that under such circumstances the power of the court should not be asserted against the real wishes of signers whose names are necessary to give jurisdiction when they in good faith desire to withdraw from the proceedings.' " [Mercersburg Independent School District, 237 Pa. 368, 371, 85 A. 467 (1912).] *Lerten Appeal*, 168 Pa. Super. 516, 524, 79 A. 2d 670 (1951). In the instant case, there would be enough signatures on the petition without the withdrawals, therefore, the rationale of this case would not provide a basis for granting the withdrawals. Additionally, the negative attitude of these residents was clearly considered by the court below in that they granted the annexation despite granting the withdrawals.

The above quote continues on to say, " 'In other words, there should be no hard and fast rule making it impossible for petitioners to withdraw from a proceeding, or to discontinue a case, because jurisdiction in the first instance had attached.' " *Lerten Appeal,* 168 Pa. Super. at 524. By adopting the first portion of the above quotation we do not pass upon the continued validity of this portion of the quotation. It may be that the Legislature has exercised its power to create a hard and fast rule against withdrawal in spite of this language. This issue, however, is not before us.

isdiction cannot be said to attach until formal action has taken place on the subject matter of the petition." However, we hold that the Act of 1953 now controls. It provides that jurisdiction attaches when the petition is presented to the Borough.

Township is appealing the inclusion of the Hedrick freehold in the petition. It contends that the signature, "Benjamin K. Hedrick & Son by Walter Hedrick," was improper and should not have been counted. We agree with the court below.

It is correct that the signature does not represent the exact freehold interest involved but Walter Hedrick, either as the survivor of the partnership or as heir, through his mother, of an interest in his father's share of the property, is the owner of a greater than one-half interest in the freehold. We agree with Judge GARB: "It is clear that it was his intention to join in the petition for annexation and the fact that he purported to sign in some agency relationship to a partnership which was then dissolved and which never had title to the property is immaterial in our opinion . . . [see Annexation of Lands in Penn Township, 29 D. & C. 2d 718 (Snyder 1962).] . . . [To hold otherwise] . . . would thwart and defeat the clear and obvious intent of a person who had the right to exercise dominion, for purposes of this annexation petition, over the property in question. *We refuse to worship form over substance to such a degree.*" (Emphasis added.)

We hold that six of the seven freehold interests were validly represented in the petition. This being more than the majority of signatures required, the annexation petition was properly considered by Borough Council.

### III.   Requirement of an Initial Determination of Legality and Propriety

Section 3 of the Act of 1953, 53 P.S. §67503 provides in part: ". . . the court, *if satisfied with the legality of*

*the proceeding and the propriety of the annexation as serving public interests,* shall appoint a board of three commissioners . . ." (emphasis added). The Township contends that Judge Monroe failed to make this initial finding prior to appointing the board.

The record fails to disclose whether or not this step was indeed taken. The burden was on Township to establish that the court omitted this step. But it is of no consequence that Township failed to meet its burden, for we agree with Judge Garb that even if this step had been omitted in *this* instance its omission is immaterial to the disposition of the annexation.

There is no doubt that such an initial finding of legality and propriety is required. *Palmer Township Annexation Case,* 416 Pa. 163, 204 A. 2d 760 (1964); *Chartiers Township Appeal,* 414 Pa. 176, 199 A. 2d 443 (1964). "Both the language and logic of the statute requires an *initial* determination, interlocutory in nature, of the legality and propriety of the annexation and a *final* determination of the legality and propriety of the annexation on the basis of all the facts then before the court." (emphasis in original) *Chartiers Twp.,* 414 Pa. at 181. But our courts have never invalidated an annexation merely because the initial finding was lacking.

The purpose of the initial finding of legality and propriety is to assist in the adducing of "all the necessary information" for the making of the final determination. *Palmer Twp.,* 416 Pa. at 178. Additionally, if the court's initial determination is that the proceedings have not been conducted according to law or are factually inappropriate for the community, the expense and time consumed by the commission have been avoided. Neither of these reasons in support of this requirement have been abrogated by the proceedings below.

Township does not claim that it was unable to place *any* evidentiary material before the commission or the

court. Neither does it claim that the appointment of the commission was a misapplication of time or money. To the contrary, in light of the commission's extensive and well reasoned report, it would be a misapplication of time and money to remand for the appointment of a new commission subsequent to an *initial* finding of propriety and legality.

We do not say that the requirement of an initial finding is of little value and can be disregarded by the courts.[2] Nor do we conclude that the court below failed to make such a determination. We only hold that where, as is the case here, the record fails to show whether the court has not made such a finding or if there had been a failure to make the initial finding but subsequently has made a final determination that the annexation is procedurally correct and factually appropriate, and where the failure to make the initial determination of legality and propriety has not prejudiced the ability of any party to introduce informative evidence, the failure to make an interlocutory determination of legality and propriety does not provide a sufficient basis for reversing the grant or denial of the annexation.

### IV. The Effect of the Change in Article IX of the Constitution of Pennsylvania

The April 23, 1968 changes in the Constitution provided an entirely new method of annexation—vote of the electors of the municipalities involved. At the time of this change, the annexation now before us was pending before the court below. Appellant contends that the change abrogated the power of the court below to continue its determinations. We disagree.

---

[2] As will be discussed in part IV of this opinion, annexation procedures have been changed by the Constitutional amendments of April 23, 1968, terminating the requirement of initial findings in annexation proceedings.

"Constitutional provisions operate prospectively and do not operate retrospectively unless the language used or the purpose of the provision indicates that operation was intended. Perkins v. Slack, 86 Pa. 270 (1878). As observed by the Supreme Court in that case in reference to the Pennsylvania Constitution of 1874, page 279, 'When the convention intended a repeal of existing laws, it was done in no ambiguous or uncertain phrase', citing as an example the use of a clause, 'such acts now existing are avoided'. It is an established principle that existing statutes not expressly or impliedly repealed by the Constitution remain in full force and effect. Milford Township Supervisors' Removal, 291 Pa. 46, 139 A. 623 (1927); Georges Township School Directors, 286 Pa. 129, 133 A. 223 (1926); Commonwealth ex rel. the Attorney General v. Mathues, 210 Pa. 372, 59 A. 961 (1904); Pittsburgh v. Pittsburgh, Carnegie & Western Railroad Company, 205 Pa. 13, 54 A. 468 (1903). The intent of the convention to avoid laws existing at the time of constitutional change must be clear. Such intent is not clear in the provision under consideration." *Lower Macungie Township Annexation Case (No. 1)*, 213 Pa. Super. 313, 319-320, 248 A. 2d 58 (1968). See also, *East Donegal Township Annexation Case*, 213 Pa. Super. 76, 245 A. 2d 706 (1968).

The authority of the Second Class Township Code over annexation proceedings pending April 23, 1968[3] was unaltered by the constitutional change. ". . . [A]ny

---

[3] The first paragraph of section 8 of the New Local Government Article of the Constitution mandates that the General Assembly enacted uniform annexation legislation within two years of April 23, 1968. Therefore, the Superior Court has recently held that annexation procedures initiated after April 23, 1968, employing the old method of annexation were valid *at least* until April 23, 1970. *In Re: Borough of Baldwin*, 217 Pa. Super. 346, 272 A. 2d 731 (1970). This position was recently adopted by the Commonwealth Court in *Township of Hempfield v. The City of Greensburg*, filed today.

change in the law relating to the manner boundaries of local municipalities may be changed adopted after the approval of the ordinance under consideration by the lower court [has] no effect upon the proceedings. Lancaster City Annexation Case (No. 2), [374 Pa. 537, 98 A. 2d 29 (1953)]; Irwin Borough Annexation Case (No. 2), 165 Pa. Superior Ct. 134, 67 A. 2d 765 (1949)." *East Donegal Township*, 213 Pa. Super. at 81. The ordinance under consideration in this appeal was approved four and one-half years prior to the constitutional change. Clearly, these proceedings were pending in April 1968 and are unaffected by the new constitutional annexation procedures.

Orders affirmed.