## Indiana Township Lines Alteration Case.

Argued January 7, 1953. Before STERN, C. J., STEARNE, JONES, BELL and CHIDSEY, JJ.

Same cases in Superior Court: 171 Pa. Super Ct. 642 and 653.

Alan D. Riester, with him William W. Milnes and Brandt, Riester and Brandt, for appellants (Appeal No. 44).

*Ferdinand T. Weil,* with him *Andrew L. Weil* and *Weil, Vatz & Weil,* for appellees (Appeal No. 44).

*Clair Groover,* for appellants (Appeal No. 109).

*Charles Wolfe Kalp,* for appellees (Appeal No. 109).

OPINION BY MR. CHIEF JUSTICE HORACE STERN, March 23, 1953:

These cases were certified to this court by the Superior Court under section 10 of the Act of June 24, 1895, P. L. 212. The controlling question involved in each of them is whether a township may annex a substantial portion of the territory of another township in proceedings instituted under a statute providing merely for the alteration of the lines of two adjoining townships.

In the Allegheny County case a petition for the alteration of the lines of Indiana Township, which is a township of the second class, and Shaler Township, which is a township of the first class, was filed in the court of quarter sessions of the county by certain individual residents of both townships. The court appointed commissioners who held a hearing and subsequently filed a report recommending that the petition be granted and a new boundary line established as prayed for. The proceedings were based upon The Second Class Township Law of May 1, 1933, P. L. 103, sec. 302, as amended by the Act of July 10, 1947, P. L. 1481, sec. 3. The area to be detached from Indiana Township and annexed to Shaler Township embraced between 350 and 500 acres, being over one-half mile in width and almost a mile and a half in length; it involved some 190 separate property owners and an adult population of approximately 300 persons; the assessed valuation of its property was over $500,000.00 or about

10% of the total assessed valuation of Indiana Township.

The court confirmed nisi the report of the commissioners, but, exceptions having been filed by the Board of Supervisors of Indiana Township and certain owners of property situate in that township, the court sustained the exceptions on the ground that such an annexation of territory was not within the purview of the statute under which the proceedings were instituted. On appeal to the Superior Court the order of the court of quarter sessions was affirmed; (171 Pa. Superior Ct. 642, 92 A. 2d 241).

In the *Union County* case, a petition was filed by certain inhabitants of Buffalo and East Buffalo Townships, both being second class townships, seeking an alteration in the boundary line between them. The court of quarter sessions appointed commissioners who held a hearing and subsequently filed their report recommending that the petition be granted and a new boundary line established as prayed for. The area to be detached from Buffalo Township and annexed to East Buffalo Township embraced some four square miles or 13% of the area of Buffalo Township; it involved a population of approximately 140 persons or 10% of the total population of the township and the assessed valuation of its property was over $130,000 or about 14% of the total assessed valuation of Buffalo Township. The court confirmed the report of the commissioners. On appeal to the Superior Court the order of the court of quarter sessions was reversed; (171 Pa. Superior Ct. 653, 92 A. 2d 246).

The Second Class Township Law of May 1, 1933, P. L. 103, sec. 302, as amended by the Act of July 10, 1947, P. L. 1481, sec. 3, provides that "The courts of quarter sessions may, upon the presentation of a petition, (a) alter the lines of a [second class] township

and any adjoining township, borough, or city so as to suit the convenience of the inhabitants thereof; (b) cause the lines or boundaries of townships to be ascertained and established; and (c) ascertain and establish disputed lines and boundaries between two or more townships or between townships and cities or boroughs."

The First Class Township Law of June 24, 1931, P. L. 1206, sec. 302, as amended by the Act of May 27, 1949, P. L. 1955, sec. 9, contains identically the same provision in regard to first class townships.

It is, of course, obvious that every detachment of territory from one political subdivision and its annexation to another necessarily involves a change of boundary lines between the two, and, on the other hand, it is equally obvious that every alteration of the boundary lines between two political subdivisions involves a detachment of some portion of the territory of the one and its annexation to the other. What, then, are the factors marking the difference between proceedings to effect an "annexation" and proceedings to effect an "alteration of boundary lines"? They would seem to be, first, the amount of the territory involved in the change, and, second, the real objective to be accomplished. Ordinarily the desire to alter a boundary line arises because of some dispute in regard to it, or because it may be uncertain, or may happen to divide an owner's land, or may so awkwardly meander in its course as to require straightening, the change in each of these cases involving but a comparatively negligible detachment of territory on the one side and its addition to the other side of the original boundary. Where, however, the avowed purpose to be accomplished is to detach from the one political subdivision a substantial portion of its territory and to annex it to the other, the reason for the change being based on some such

consideration as relative school facilities, questions of taxation and assessed valuations of property, social conveniences, or the like, the proceeding becomes obviously one of annexation and the alteration in the boundary line merely incidental to the accomplishment of the larger objective.

A survey of the legislation on the subject shows that the legislature has always had in mind the difference between annexations and alterations of boundary lines, whether in the case of counties, cities, boroughs, or townships.* Some of the statutes specifically provide

---

* The Act of March 24, 1803, 4 Sm. L. 30, provided that the courts of quarter sessions had authority to alter the lines of any two or more adjoining townships so as to suit the convenience of the inhabitants thereof.

The Act of April 15, 1834, P. L. 537, section 13, contained a similar provision.

The Act of April 28, 1903, P. L. 332, provided that any city, borough, township, or part of a township, might be annexed to any contiguous city.

The General Township Act of July 14, 1917, P. L. 840, section 70, provided that the courts of quarter sessions might alter the lines of any two or more adjoining townships of the first or second class so as to suit the convenience of the inhabitants thereof, and cause the lines or boundaries of townships to be ascertained and established. Section 80 provided that the courts of quarter sessions might ascertain and establish disputed lines and boundaries between two or more townships, between townships and cities, or between townships and boroughs.

The Act of May 12, 1925, P. L. 596, provided that the court of quarter sessions might alter the boundaries of a county for the purpose of annexing a part of the county or a borough therein to an adjoining county.

The General Borough Act of May 4, 1927, P. L. 519, sections 410, 430, 502, 507, 510, as amended by the Borough Code of July 10, 1947, P. L. 1621, and by the Act of July 19, 1951, P. L. 1026, provided for the annexation of a township of the first class, or part thereof, to a contiguous borough, and for the annexation to a borough of adjacent territory located in a township of the second class. It was provided that the court of quarter sessions

for alterations of boundary lines and others for annexations of territory,—a distinction accentuated by the

---

might change the limits of any borough in certain cases by detaching territory therefrom and annexing the same to a contiguous township or borough. Also that the court of quarter sessions might alter the lines of a borough and any adjoining township, borough or city, so as to suit the convenience of the inhabitants thereof, cause the lines and boundaries of boroughs to be ascertained and established, and ascertain and establish disputed boundaries between two or more boroughs, between boroughs and cities, or between boroughs and townships. And whenever the dividing line between two adjoining boroughs was uncertain, or the boroughs desired that the line should be changed, or when it separated the property of an owner into two or more parts, the borough councils might declare and fix such boundary line or change it.

The Third Class City Law of June 23, 1931, P. L. 932, sections 501, 525, provided for the annexation of a borough, or territory in a borough, or a township or part of a township, to a third class city. These provisions were continued in The Third Class City Code of June 28, 1951, P. L. 662. Section 602 of the latter act provided that the court of quarter sessions, upon petition of any interested political subdivision, might ascertain and establish disputed boundaries between any such parties.

The provisions of The First Class Township Law of June 24, 1931, P. L. 1206, section 302, as amended by the Act of May 27, 1949, P. L. 1955, section 9, and the provisions of The Second Class Township Law of May 1, 1933, P. L. 103, sec. 302, as amended by the Act of July 10, 1947, P. L. 1481, section 3, are set forth in the text.

The Act of July 2, 1937, P. L. 2803, reenacted by the Act of May 9, 1951, P. L. 225, provided for the annexation of a township of the first class, or part thereof, to a contiguous city or borough.

The Act of June 15, 1939, P. L. 372, provided for the annexation of a borough or township to a city of the Second Class A.

The Act of June 19, 1939, P. L. 430, provided that the court of quarter sessions had authority to change the limits of any first class township in counties of the second class by detaching any portion of its territory therefrom and annexing the same to any contiguous first class township, borough, or city of the second class.

The Act of April 6, 1949, P. L. 395, provided for the annexation of any political subdivision to a city of the first class.

fact that provisions for each of those purposes are sometimes included in the same act, showing plainly that it was not the legislative intention that annexations of territory should be effected in proceedings providing merely for the alteration of boundary lines. Leading to this same conclusion is the fact that in the annexation statutes there are elaborate provisions for notice to the official authorities of the political subdivisions concerned—burgess, council, commissioners or supervisors as the case may be—and also a requirement that assent to the annexation be given by a vote of the inhabitants of the respective townships, boroughs or cities concerned; in the case, however, of the statutes providing for the alteration of boundaries there is no mandatory provision for the giving of such notice or the obtaining of the consent of the electorate.

It may appear strange that, while there is an abundance of legislation covering annexations as between counties and boroughs, boroughs and townships, boroughs and cities, and townships and cities, and while there is a provision for the consolidation of two or more first class or two or more second class townships (Act of June 24, 1931, P. L. 1206, section 210, as amended by the act of May 27, 1949, P. L. 1955; Act of May 1, 1933, P. L. 103, section 205, as amended by the Act of July 10, 1947, P. L. 1481) there is no general provision for the annexation of one township or part thereof to another township. Whether, however, this omission is due to deliberate intent on the part of the legislature, or merely to oversight, is immaterial; in either event it is to that body that appeal must be made for the enactment of provisions permitting and governing such annexations.

Appellants urge that the case of *The Division Line of Clay, West Cocalico and Ephrata Townships*, 33 Pa. 366, is binding authority for the proposition that sub-

stantial parts of townships may be annexed to another township under a statute providing merely for the alteration of the lines of two or more adjoining townships. The sole decision in that case, however, was that in the proceeding there instituted it was not necessary to have a concurring vote of the people affected by the change, because the Act of March 14, 1857, P. L. 93, which required such a vote, related only to proceedings to divide a township into two or more, and the Act of April 24, 1857, P. L. 304, which also required an election, related only to the erection of a new township out of two or more adjoining ones, and therefore neither of those acts was applicable. The question as to whether the annexation of the territory there involved could be effected under the Act of April 15, 1834, P. L. 537, section 13, which provided merely for the alteration of the lines of two or more adjoining townships, was not directly presented to, nor decided by, the court. In any event, this case, featured as it was by an extremely laconic opinion, and never since cited during the nearly one hundred years since it was decided, cannot be presently accepted as controlling authority.

The orders of the Superior Court are affirmed.

Mr. Justice ARNOLD did not sit and took no part in the consideration or disposition of this case.

––––––––––

DISSENTING OPINION BY MR. JUSTICE JONES:

Out of a regard for *stare decisis* as well as a distaste for judicial legislation, I dissent from the action of the majority in these cases.

The current opinion for this court flatly rejects the early decision in *In the Matter of the Division Line of Clay, West Cocalico, and Ephrata Townships,* 33

Pa. 366, which construed statutory language identical with that here involved. Thereby, the relevant procedure for one township's annexation of land from another under the statutory "alteration of lines" provision was definitely established in 1859 and was never thereafter materially changed by the legislature. The Superior Court, which, by a bare majority, declined in the instant cases to follow the ruling of this court in the *Clay* case, supra, certified these appeals to us "Because the question of stare decisis should, with more propriety, be passed on [i.e., ignored] by the Supreme Court rather than by [the Superior Court]."

As recently as the case of *Burtt Will*, 353 Pa. 217, 231, 44 A. 2d 670, Mr. Justice STEARNE, speaking for this court, said that "The doctrine of *stare decisis* still prevails in Pennsylvania. . . . This Court has always rigidly adhered to the rule of *stare decisis. A statutory construction, once made and followed, should never be altered upon the changed views of new personnel of the court"* (Emphasis supplied). That the point involved in the *Clay* case was never again raised in an appellate court until now evidences the persistent virtue of that decision which construed so plainly and effectually the statutory language present for interpretation that no one thenceforth had the temerity to question its authority. It cannot be otherwise than that dozens, if not hundreds, of annexations by one township from another under the "alteration of lines" statutory provision have taken place in this State since the *Clay* case. The fact is that there is no other statutory procedure for such an annexation. We were told at bar by counsel who examined the records in Lancaster County where the *Clay* case arose that he had found many other like proceedings there involving in some instances more acreage than the instant cases are concerned with. Nor should the decision in the

*Clay* case be deemed any less "controlling authority" because it is contained in a "laconic opinion",—a customary judicial practice in the days when opinions had to be written in longhand.

I think it is regrettable that the majority have not seen fit to abide by statutory law as decisionally established and decide these cases on the basis of the reasoning so well expressed by President Judge RHODES in his opinion for the Superior Court minority: see 171 Pa. Superior Ct. at p. 649.