## Palmer Township Annexation Case.

164

Argued March 17, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Tom P. Monteverde,* with him *Robert M. Blair-Smith, Bernard V. O'Hare, Jr., Robert H. Jordan,* and *Schnader, Harrison, Segal & Lewis,* for appellants.

*E. Jerome Brose,* with him *Danser, Brose & Poswistilo,* for appellees.

OPINION BY MR. JUSTICE COHEN, November 24, 1964:

On July 26, 1961, a majority of the freeholders of a portion of the Township of Bethlehem, Northampton County, Pennsylvania, filed with the Supervisors of Palmer Township, Northampton County, Pennsylvania, a petition for annexation of such portion of the former township to the latter township. Since both townships were of the second class on the date of filing, the proceedings were and are governed by the provisions of the Act of July 20, 1953, P. L. 550, 53 P.S. §§67501-67508.[1]

Subsequently, on August 7, 1961, the Board of Supervisors of Palmer Township enacted an ordinance approving the petition; and on August 14, 1961, they caused it to be certified to the Court of Quarter Sessions of Northampton County as provided by the Act of 1953, supra, §2, 53 P.S. §67502.

On September 7, 1961, Bethlehem Township, the School District of Bethlehem Township, the Bethlehem Township Municipal Authority and three individual residents of Bethlehem Township filed two complaints with the court objecting to the annexation. In one, the complainants asked the court to declare the ordinance void or to appoint a fact-finding board in accordance with the Act of 1953, supra, §3, 53 P.S. §67503. In the second, they challenged the validity of the ordinance pursuant to the Act of May 1, 1933, P. L. 103, §702,

---

[1] Bethlehem Township became a township of the first class after passage of the annexing ordinance. See *Carnegie Borough Annexation Case,* 408 Pa. 146, 182 A. 2d 527 (1962).

cl. XLI, as amended, 53 P.S. §65741, and also alleged that the Act of 1953, supra, (1) was unconstitutional and (2) did not provide for the annexation of a second class township to a township of the same class.

Answers to both complaints were filed by the Township of Palmer, denying the allegations of invalidity and asking for the appointment of the fact-finding board. Thereafter, on October 23, 1961, the lower court entered an order requiring argument by the parties on November 7, 1961, as to (1) the specificity of certain allegations in the complaints, (2) the procedure to be followed and (3) the burden of proof. This argument was held as ordered, and the court below determined (1) that the complainants should amend one of their complaints in certain particulars; (2) argument on the constitutionality of the statute and legality of the ordinance would be heard on November 20, 1961, after which testimony, where needed, would be taken as to the legality of the proceedings; and then, if necessary, testimony as to the propriety of the annexation would be taken; (3) on all factual questions raised in the complaints, the complainants have the burden of proof.

The amended complaint was duly filed, and argument duly held. On March 30, 1962, the lower court handed down an opinion, holding that (1) the Act of 1953, supra, does not involve an unconstitutional delegation of legislative powers in its placing upon the courts the duty of determining the propriety of an annexation as serving public interests, (2) the Act of 1953 authorizes a township of the second class to annex a portion of another township of the same class, (3) the advertisement of the proposed adoption of the annexation ordinance by the supervisors of Palmer Township was not defective and (4) the School District was not a proper party complainant. Accordingly, the court overruled the complainants' legal objec-

tions to the annexation and directed them to place the matter on a hearing list for the taking of testimony.

Thereafter, on May 18 and 25, 1962, the complainants presented testimony before the lower court on the other objections raised by them. In its opinion on September 25, 1962, the court en banc ruled as follows: (1) the complainants, not those seeking annexation, have the burden of proving both the illegality and impropriety of the annexation; (2) unless fraudulent or flagrantly improper, the motives of those seeking annexation are irrelevant to the questions of legality and propriety; (3) the supervisors of Palmer Township did not abuse their discretion in adopting the annexing ordinance; (4) the evidence presented by the complainants did not sustain their objection that a majority of freeholders in a part of the area to be annexed were opposed to the annexation; and (5) while the court was satisfied initially with the legality and propriety of the annexation, a board of commissioners should be appointed, in accordance with §3 of the Act of 1953, to study the facts regarding the annexation.

The board was appointed, held hearings and made a factual report to the court. Final argument was held, no exceptions being filed to the report of the board; and the lower court en banc handed down its opinion and order affirming the annexation on April 1, 1963. This appeal followed.[2]

The appellants, complainants in the court below, raise three issues here. First, and most extensively, they question the constitutionality of the Act of 1953, contending that it involves an invalid delegation of legislative power to the judiciary in placing upon the courts the responsibility of being satisfied with the

---

[2] This appeal was filed prior to December 1, 1963; hence, it is properly before us. After that date all appeals under the Act of 1953 must be taken to the Superior Court. Act of August 14, 1963, P. L. 819, §1, 17 P.S. §§181, 182.

propriety of the annexation as serving public interests without establishing standards to guide the court in so doing. Second, they assert that the court below erred in three particulars in considering the proceeding: (a) in placing the burden of proof as to the propriety of the annexation on appellants, (b) in ruling that the motives of the proponents of annexation were irrelevant and (c) in making findings of fact unsupported by any evidence. Third, they contend the court's reliance on the belief that a majority of persons in the area to be annexed favored such action was improper.

The Act of July 20, 1953, 53 P.S. §§67501-67508, contains no provision regarding an appeal. Consequently, the scope of our review is on broad certiorari. *Chartiers Township Appeal,* 414 Pa. 176, 199 A. 2d 443 (1964) ; *Bell Appeal,* 396 Pa. 592, 152 A. 2d 731 (1959). In such a case we may consider (1) the jurisdiction of the court below, (2) the regularity of the proceedings, (3) the record, to determine if the findings are supported by competent evidence and to correct any errors of law. *Kaufman Construction Company v. Holcomb,* 357 Pa. 514, 55 A. 2d 534 (1947) ; *Chartiers Township Appeal,* supra.

The Act of 1953 governs annexation of territory in a second class township to a borough, city or township.[3] It is merely one of a number of statutory pro-

---

[3] Whether the Act of 1953 repealed by implication other statutory provisions regarding annexation of territory in a second class township to a borough or city poses an unresolved question, see *Annexation by City of York,* 77 York 22 (1962) ; *In re Carroll Township Annexation,* 74 York 82 (1960) ; *In re Annexation of Land in the Township of Carroll by the Borough of Donora,* 38 Wash. 95 (1957) ; *In re Annexation to Borough of New Centerville,* 18 Som. 319 (1956), and *Hazle Township Annexation Case,* 183 Pa. Superior Ct. 212, 130 A. 2d 230 (1957), which we have not yet had to determine, see *West Conshohocken Borough Appeal,* 405 Pa. 150, 173 A. 2d 461 (1961), and *Carnegie Borough Annexation Case,* 408 Pa. 146, 182 A. 2d 527 (1962).

visions regarding annexations, not all of which are similar. They may be summarized as follows:[4]

1. The Act of April 28, 1903, P. L. 332, as amended, 53 P.S. §§171-176, regarding annexation of any form of subdivision to a contiguous city in the same county, places no responsibility upon the courts to inquire into the propriety of the annexation.

2. The Act of May 31, 1923, P. L. 473, 53 P.S. §§22151-22153, regarding annexation to a city of the second class of a small portion of a township entirely surrounded by the city of the second class, places no responsibility upon the courts to inquire into the propriety of the annexation.

3. The Act of June 15, 1939, P. L. 372, 53 P.S. §§30251-30259, regarding annexation of a borough or township to a city of the second class A, places no responsibility upon the courts to inquire into the propriety of the annexation.

4. The Act of June 23, 1931, P. L. 932, §§501-580 as reenacted by the Act of June 28, 1951, P. L. 662, as amended, The Third Class City Code, 53 P.S. §§35501-35580, regarding (a) annexation of boroughs and of all or part of a township to a contiguous third class city, (b) annexation of certain outlying lots in a township to a contiguous third class city, (c) annexation of part of a borough to a contiguous third class city and (d) annexation of contiguous land owned by a third class city to said city, places no responsibility upon the courts to inquire into the propriety of the annexation in any case.

5. The Act of May 4, 1927, P. L. 519, as reenacted by the Act of July 10, 1947, P. L. 1621, §§401-432, as amended, The Borough Code, 53 P.S. §§45401-45432, regarding (a) annexation of all or part of a township

---

[4] No attempt is made in this summary to indicate to what extent a particular act may have been repealed by another act.

of the first class to a borough, (b) annexation of all or part of a township of the second class to a borough, (c) detachment of territory from a borough and annexation of same to a contiguous township or borough and (d) annexation of territory in a township to a borough when the territory is both owned by the borough and contiguous to the borough, places upon the courts certain duties expressed in various words. In (b) if the township territory is in the same county as the borough, the court, after hearing the petition for annexation, is to make such order thereon "as to right and justice shall appertain," Act of 1927, supra, §413, 53 P.S. §45413, either confirming or refusing the annexation. Again in (b) if the township territory is in a different county from the borough, the courts of each county are to select a joint board of commissioners who make a recommendation in favor of or against the annexation; and the courts either approve or disapprove. In (c) the court is to hear the petition for detachment and determine in favor of or against the detachment.

6. The Act of April 22, 1903, P. L. 247, as amended, 53 P.S. §§53101-53102, regarding the annexation of adjacent lots to a borough or incorporated town, places no responsibility upon courts to inquire into the propriety of the annexation.

7. The Act of July 2, 1937, P. L. 2803, as reenacted by the Act of May 9, 1951, P. L. 225, 53 P.S. §§59101-59109, regarding annexation of all or part of a township of the first class to a contiguous borough or city, places no responsibility upon the courts to inquire into the propriety of the annexation.

8. The Act of July 20, 1953, P. L. 550, 53 P.S. §§67501-67508, involving the annexation of territory in a second class township to a borough, city or township, does place upon the courts the responsibility for inquiring into the propriety of the annexation as serving

public interests before acting. This is the statute involved in this proceeding.

Thus, while certain provisions of The Borough Code, supra, place a discretionary function in the courts, the Act of 1953 is the only annexation provision among the hodge-podge of statutory annexation provisions which requires the courts, in so many words, to inquire into the "propriety of the annexation as serving public interests." However, it should be noted that there also exists in The Borough Code a general appeal provision, §1010, 53 P.S. §46010, regarding complaints as to the legality of any ordinance, which concludes: "In cases of ordinances effecting annexation of territory . . . the court shall have jurisdiction to review the propriety as well as the legality of the ordinance."

No determination of the constitutionality of these relevant provisions of The Borough Code has been made. The present case appears to be one of first impression on this point.

Appellants' contention in this respect may be summarized as follows. The fixing of the boundaries of political subdivisions is a legislative function. As such, this function cannot be delegated to the judiciary. The only thing that can be delegated is the power to determine if there exists the necessary state of facts upon which an annexation may be confirmed. The power to permit or refuse annexation based upon a determination of "the propriety of the annexation as serving public interests" sets up no legislative standard for the court to follow. Hence, the Act of 1953 is unconstitutional.

The answer of appellees and the lower court is that the statutory provision in question does set forth a sufficiently precise and definite legislative standard in light of the long historical ties between the courts of quarter sessions and the fixing of the boundaries of

political subdivisions. They specifically refer to the decision in *Nester Appeal*, 187 Pa. Superior Ct. 313, 144 A. 2d 623 (1958), in support of this position.

*Nester Appeal* involved presentation to the Court of Quarter Sessions of Montgomery County of a petition by electors of the Borough of Pottstown asking for a consolidation of the existing wards of that Borough as permitted by §601 of The Borough Code, 53 P.S. §45601. Objection was made on the ground that §601 was unconstitutional. In upholding the power of the courts to act, the Superior Court pointed to (1) the Act of March 24, 1803, 4 Sm. L. 30, which gave to the courts of quarter sessions the power, upon petition, to erect new townships and to alter the lines of adjoining townships "so as to suit the convenience of the inhabitants thereof," (2) the similar power regarding wards of boroughs contained in the Act of May 14, 1874, P. L. 159, and (3) various early cases in which similar statutory provisions were before the courts without dispute as to the authority of the quarter sessions court to act. The standards established in these cases, said the Superior Court, provide the law of the Commonwealth necessary to guide the courts of quarter sessions and make it unnecessary for the legislature to establish in detail the necessary standards.

The appellees also refer to *Irwin Borough Annexation Case (No. 1)*, 165 Pa. Superior Ct. 119, 67 A. 2d 757 (1949), in which the Superior Court affirmed the lower court's decision regarding the "propriety" of the annexation. There, the Superior Court pointed out that the concept of "propriety" had been introduced into the law by a 1933 amendment, Act of May 18, 1933, P. L. 818, §1, to what was then called The General Borough Act of May 4, 1927, P. L. 519. It did not discuss the constitutionality of this new provision although it drew an analogy between the discretion there lodged in the quarter sessions courts and the dis-

cretion given those courts in the Acts of April 1, 1834, P. L. 163, and April 3, 1851, P. L. 320.

Appellants reply to this argument by stating that the *Irwin Borough* case did not determine the issue of constitutionality and that *Nester Appeal,* in not dealing with annexations, is of limited relevance here. Moreover, they point to our decision in *Indiana Township Lines Alteration Case,* 373 Pa. 319, 95 A. 2d 506 (1953), as clearly refuting any contention that the Act of 1803, supra, supports the power given to the quarter sessions courts by the present Act of 1953. In this last-noted case we pointed out that the power to alter boundary lines was different from the power to effect annexations.

With this background we are faced squarely with the constitutional issue. We perceive, initially, that the fact that the present case involves two townships and that the Act of 1953 deals with annexation of township territory raises no implication that precedents dealing with other political subdivisions are irrelevant. The contrary is true for we here treat the power of the courts of quarter sessions to deal with certain matters affecting political subdivisions generally.

The Act of April 1, 1834, P. L. 163, gave to the court of quarter sessions power to incorporate towns and villages as boroughs and to change the limits of any borough. Upon application of the inhabitants the court was to place the matter before the grand jury for investigation; and if the grand jury found that the act had been followed and that it was "expedient" to grant the petition, it was so to report to the court. The court could confirm the report and order the incorporation or change in boundary; or it could, if it deemed further investigation necessary, make such an order "as to right and justice shall appertain."

The Act of April 3, 1851, P. L. 320, gave to the court of quarter sessions power to entertain a com-

plaint regarding roads and streets in a borough and to make such an order as shall be "just and reasonable." It also authorized that court to entertain an application from an existing borough to become subject to the Act of 1851 and "in their discretion" to refuse such application upon remonstrance of the inhabitants.

By the Act of June 2, 1871, P. L. 283, the borough authorities were required, when they annexed any territory to the borough by ordinance, to file a plan of the extension with the court of quarter sessions and to publish notice of their action. Thereafter, any citizen of the borough or of the annexed territory could appeal from the ordinance to said court; and the court had the power "at its discretion" to decree or refuse the extension of the borough limits in the same manner as it did under the Act of 1834, supra. While this discretion was repealed by the Act of April 22, 1903, P. L. 247, it reappeared in the Act of May 14, 1915, P. L. 312, The General Borough Act.

The Act of June 11, 1879, P. L. 150, supplemented the Act of 1851, supra, by providing specific provisions for annexation to a borough in language similar to that set forth in the Act of 1834, supra, with regard to incorporation and change of limits. In other words, the grand jury was to decide if the statute had been complied with and the annexation was "expedient"; and the court of quarter sessions had power to confirm the report or take such further action "as to right and justice shall appertain."

Under the Act of June 24, 1931, P. L. 1206, §1502, as reenacted by the Act of April 2, 1947, P. L. 49, The First Class Township Code, 53 P.S. §56502, the court of quarter sessions, upon complaint, may review the propriety as well as the legality of an ordinance laying out streets over private property.

These acts, as well as the others referred to in the *Nester, Irwin Borough* and *Indiana Township* cases,

supra, amply illustrate the variety of powers given to the courts of quarter sessions in dealing with the boundaries and affairs of political subdivisions. While discretion is not always a feature of these powers, it was present in each of the above cited acts—including acts dealing with annexation; and although existing annexation statutes provide for discretion in only two cases—under The Borough Code and under the Act of 1953—this factor does not alter the obvious historical fact that the court of quarter sessions has long exercised wide discretionary powers in this area. In this respect we find no basis for distinguishing between the presently challenged "propriety of the annexation as serving public interests" and the prior phrases, such as "at its discretion" and "as to right and justice shall appertain" or even just "the propriety." They all require reference to the body of law developed over the years; and even though an annexation may, in fact, be different from an incorporation or a boundary line alteration or a ward division or abolition, it raises issues not dissimilar in the context of the general affairs of political subdivisions.

Therefore, we conclude on this first point that the power given to the court of quarter sessions to inquire into the propriety of an annexation under the Act of 1953 is within the traditional, albeit unusual, powers long bestowed upon these courts in Pennsylvania and does not involve an unlawful allocation of legislative power to the judiciary. Whether or not the continued reliance on judicial discretion in this limited portion of the total annexation potpourri is wise and beneficial in today's administration of local government is not for us to determine. Change in these matters must come from the General Assembly; it is here sufficient that what has been done is constitutionally proper.

We come, then, to appellants' second contention. In considering the alleged errors, we must refer, first,

to the Act itself for the proper understanding of its provisions.

Annexation of territory in a second class township to a city, borough or another township is initiated by a majority of the freeholders in the proposed annexed territory. Act of 1953, supra, §1, 53 P.S. §67501. In the proceedings below the present appellants attempted to show that while a majority of freeholders in the Bethlehem Township territory to be annexed had signed the petition, this majority resided in a small area of this territory and that the freeholders residing in the remaining area were opposed to the annexation. The lower court disposed of this attempt by holding (1) the evidence was insufficient on this point and (2) the establishment of the annexation line is in the hands of the petitioning freeholders and annexing subdivision.

Without independently passing upon the court's first conclusion, we must agree with the second. However, in view of our disposition of this proceeding, we believe certain comments are in order. Where, in the unusual circumstance of an annexation proceeding involving an area considerably larger than that in which the petitioning freeholders reside, it can be shown that the freeholders in the remaining area are opposed to the annexation, this fact is one which must be taken into consideration by the lower court in determining the propriety of the annexation as serving public interests. Otherwise, it may be that the dissatisfied freeholders, after the annexation is completed, will simply petition their former governing subdivision for reannexation minus the area in which the original petitioning freeholders reside. Avoidance of this type of action is desirable; and even though the lower court cannot change the line set by the petitioners, it may consider these possibilities in weighing the question of propriety.

The annexation petition is then filed with the governing body of the annexing subdivision, Act of 1953,

§1, 53 P.S. §67501, which, if it approves, must certify the petition to the court of quarter sessions, Act of 1953, §2, 53 P.S. §67502. If, within thirty days after certification, no aggrieved person complains to the court and asks for the appointment of a fact-finding body, the court is to satisfy itself regarding the "legality of the proceeding and the propriety of the annexation as serving public interests" and, if satisfied, is to affirm the annexation. Thus, even if no complaint is made, the court must be satisfied that (1) the procedures that have been followed conform in all respects to the statutory requirements and are not irregular in any way and (2) the annexation is in the public interest. The court has the duty of making its own inquiry with regard to these two matters, and it cannot satisfy itself as to the second simply by referring to the wishes of the majority. As we recently said: "The statute clearly makes the wishes of the majority of the area freeholders only one of the factors to be considered; consideration of such factor as the sole factor . . . negates both the language and the intent of the statute." *Chartiers Township Appeal,* 414 Pa. 176, 181, 199 A. 2d 443, 445 (1964).

On the other hand, if a complaint is filed asking for the appointment of a fact-finding body, the court must initially, and as an interlocutory matter, make the same determinations as to legality and propriety, Act of 1953, §3, 53 P.S. §67503. *Chartiers Township Appeal,* supra. In this respect there is no burden of proof. It is the court's duty to inquire even in the absence of complainants; and while the complainants may present evidence to assist the court in making its determination, it is wrong to place a burden of proof upon them as the court below did here. Similarly, of course, the proponents may present whatever evidence they can to support the legality of their procedures and the propriety of the annexation; but

here, too, no burden of proof is upon them. The lower court must make an independent determination that the statute has been observed and the annexation is desirable.

If it is satisfied at this stage, the court then appoints a fact-finding body. Act of 1953, §3, 53 P.S. §67503. This board must inquire into and find facts as to five specific matters, plus any other matters directed by the court. Act of 1953, §4, 53 P.S. §67504. It is then to report to the court which considers its findings plus any additional facts submitted to it and makes a final order. Act of 1953, §5, 53 P.S. §67505. Obviously, the purpose of this additional proceeding is to adduce all of the necessary information to assist the court in making a final decision as to whether the annexation is in the public interest. It is not a hearing in the sense that exceptions are to be filed by the parties or that either party takes on a burden of proof. It is simply a supplemental procedure sanctioned by statute for the court's benefit and to enable the parties to submit expeditiously to the court the relevant facts.

In the present case the court directed the board to inquire into only the five specific points set forth in the statute. Act of 1953, §4, 53 P.S. §67504. In doing so, the board has obviously gone beyond the usual procedures for it stated in its report that it "made inquiry by conferring with interested counsel, by taking testimony, by viewing the ground, by considering certain unsolicited communications and verbal advices, and by studying relevant documents and maps." The first and fourth of these were improper methods of finding facts. Counsel may stipulate facts before the board; otherwise, they are not sources of facts. The other erroneous source is unfathomable to us; such communications and advices can only be considered if produced at the board's hearing. These improper procedures by the board cannot be said to have been disregarded by the court below in its final opinion.

In considering the board's report and handing down its opinion, the court found that about half of Bethlehem Township would be annexed, that about a third of its roads were in the proposed area to be annexed, that this third represents about thirty-seven percent of the value of Bethlehem Township's roads, that about forty percent of the assessed value of taxable properties in Bethlehem Township was in the area to be annexed, that a tax increase would be necessary in Bethlehem Township if the annexation were affirmed, that there is local police protection in Palmer Township but not in Bethlehem Township, and that about twenty-three percent of the population in Bethlehem Township lives in the area proposed to be annexed.

The court also held that the motives of the proponents of annexation were irrelevant and that under the circumstances great deference must be paid to the wishes of the proponents. The former is not correct. See *West Conshohocken Borough Appeal,* 405 Pa. 150, 173 A. 2d 461 (1961). Motive is a factor to be considered in weighing the entire picture although a motive not contributing to the public interest will not thwart an annexation otherwise in the public interest. We have already pointed out that the wishes of a majority are not decisive. *Chartiers Township Appeal,* supra.

In exercising our appellate function here, we are unavoidably led to the conclusion that the matters herein discussed require a reversal of the order entered by the court below. In affirming the annexation, the court seemed to pay undue deference to the wishes of the proponents without finding any overall propriety in the annexation in serving the public interest. In so doing, it placed upon the complainants a burden of showing a lack of propriety, an equally incorrect procedure. While we might well find here, if

we independently weighed the evidence and findings, no proper basis for annexation, this is not our function. Therefore, we shall remand the proceeding for a determination based upon the proper factors as outlined in this opinion.

The order of the court below is vacated and the case remanded for further proceedings consistent with this opinion.

Mr. Chief Justice BELL concurs in the result.