## Horsham Township Election

*Waters, Fleer, Cooper & Gallager*, for petitioners.
*Anthony J. Giangiulio*, for intervenors.

DITTER, J., May 24, 1966.—This matter concerns a petition to increase the number of supervisors in a second class township from three to five and an intervenor's motion to dismiss the petition on constitutional grounds.

The Second Class Township Code of May 1, 1933, P. L. 103, as amended by the Act of July 13, 1961, P. L. 596, sec. 1, 53 PS §65402, states in part:

"Section 402 . . . (A) The electors of each township shall elect . . . three supervisors . . .

"(B) The court of quarter sessions upon petition *may* provide for the election of two additional supervisors in any township having a population of ten thousand or more . . . The petition *shall* be presented by the board of supervisors pursuant to a resolution of such board or by at least five per centum of the registered electors of the township. . . ." (Italics added).

The section goes on to provide that the new positions shall be filled by the electors at the first municipal election following the court's decree.

Such a petition was filed by more than five percent of the registered electors of Horsham Township, alleging that the township has a population in excess of 10,000 persons and requesting a decree ordering the election of two additional supervisors. An elector of the township has intervened and has moved for the dismissal of the petition, alleging that the Act of July 13, 1961, is unconstitutional because it gives unguided discretion to the court, and thus amounts to a delegation of legislative authority to the judiciary.

Certain basic principles apply to this controversy:

1. The legislative functions of our State government are vested in the General Assembly by the Constitution, and its powers may not be surrendered to either the executive or judiciary. This means that the legislature cannot confer unfettered discretion upon the courts: Commonwealth v. Franklin, 172 Pa. Superior Ct. 152. 183 (1952).

2. All municipalities are created by the state for the purpose of carrying out subordinate governmental affairs. The extent of these functions and how they are exercised is controlled by the legislature.

3. Although the legislature cannot delegate its power to enact laws, it can delegate the power to determine the existence of facts upon which a law is intended to operate: Locke's Appeal, 72 Pa. 491, 498 (1873).

4. The principle of separation of powers applies with least force and effect to the judiciary, for when courts are said to exercise discretion, the reference is always to legal discretion within, not without, the bounds of the law: Nester Appeal, 187 Pa. Superior Ct. 313, 320 (1958).

5. Historically, in Pennsylvania the legislature has conferred broad powers upon the courts of quarter sessions to deal with the affairs of political subdivisions: Palmer Township Annexation Case, 416 Pa. 163, 174-175 (1964).

6. An act of the General Assembly will not be declared unconstitutional unless it *clearly*, *palpably*, and *plainly* violates the Constitution: Daly v. Hemphill, 411 Pa. 263, 271 (1963).

Faced with the contention that the statute under which they are proceeding constitutes an unconstitutional delegation of power to the court, petitioners allege it is valid because its provisions are mandatory, and thus do not constitute a grant of permissive power, or, if the act is interpreted to be discretionary in nature, it is valid because it sets up enough beacons for

the court to follow the course the legislature intended to chart.

I. Are the provisions of this act mandatory?

The legislature used these words: "The court of quarter sessions upon petition *may provide* for the election of two additional supervisors . . . The petition *shall be presented* by the board of supervisors pursuant to a resolution of such board or by at least five per centum of the registered electors of the township". (Italics supplied.)

Although the word "may" in a statute is often construed in a mandatory sense, especially in cases in which public interests are concerned and where the public has a claim that the power given shall be exercised, yet in its ordinary sense it is a permissive word. In cases of doubt, resort should be had to the context as an aid to legislative intent: Commonwealth ex rel. Fox v. Swing, 409 Pa. 241, 246 (1962).

From an examination of the other language used, the nature of the contemplated change, and the percentages involved, we are convinced that the legislature did not intend that the board of supervisors *must* be increased upon the presentation of the required petition.

In the first place, the petition in question requires the signatures of only five percent of the electors of the township. If the words "may provide for the election" are interpreted to mean "must provide", the desire of five percent of the voters of the township to increase the board's size would prevail despite the possible command of the other 95 percent to let the number remain unchanged. We cannot believe that the legislature intended that the wishes of one out of 20 electors should be absolutely determinative of this issue.*

---

* The requirement for a petition signed by five percent of the electorate as a means to initiate consideration of municipal questions is one often used by the legislature. In some instances, the

Secondly, the legislature has used the word "may" in one sentence and immediately thereafter has used the word "shall". The use of the words "may" and "shall" in close proximity indicates the legislative intent to confer discretion by the use of the former and command action by the use of the latter: Commonwealth of Pennsylvania, Department of Welfare v. Garland, 393 Pa. 45, 51-52 (1958).

Judge Burton R. Laub ruled in In Re: Two Additional Supervisors for Harborcreek Township, Etc., 46 Erie 36 (1961), that the act gives the court discretionary power to increase the number of supervisors. In that case, the court refused to enlarge the board of supervisors despite the required petition, holding that an existing controversy in which the board was involved should be settled first and that the petition had not been conceived in an atmosphere of calm reflection and consideration which should prevail in all matters of public concern.

We are well aware of the fact that President Judge Gawthrop of Chester County decided, in Tredyffrin Township Supervisors Election, 27 D. & C. 2d 764 (1962), that it was the intent of the legislature to impose a positive and absolute duty upon the court to approve the enlargement of the board of supervisors upon the presentation of the required petition. We regret that we cannot agree with our learned colleague as to that portion of his decision.

II. Does the statute provide sufficient standards for the exercise of judicial discretion?

---

ultimate decision is for the court of quarter sessions, and in others, the electorate. For example, see: Act of May 1, 1933, P. L. 103, art. II, sec. 206, 53 PS §65206; Act of June 24, 1931, P. L. 1206, art. II, sec. 211, 53 PS §55211; Act of May 1, 1933, P. L. 103, art. II, sec. 226, 53 PS §65226; Act of May 4, 1927, P. L. 519, art. VI, sec. 602, 53 PS §45602; Act of May 4, 1927, P. L. 519, art. VIII, sec. 815, 53 PS §45815; Act of May 4, 1927, P. L. 519, art. VIII, sec. 816, 53 PS §45816.

In view of our conclusion that the act in question has vested discretionary power upon the court of quarter sessions to enlarge or to refuse to enlarge the board of supervisors, we must next consider whether or not that authority has been validly conferred. The judiciary has no right to accept a power in terms so broad and meaning so vague that the application or non-application of the law depends solely upon the individual opinion and predilections of the trial judge. Any statute which makes the judge's discretion the only rule for his conduct must be regarded as invalid: Commonwealth v. Franklin, supra, at page 184 (1952).

It is significant that this act purports to confer authority upon the courts of *quarter sessions* in a matter relating to local government.

Courts of quarter sessions have exercised control over municipalities since the earliest days of the Commonwealth as a result of a wide variety of legislative enactments. These statutes and the cases interpreting them have created a body of law relating to political subdivisions. Thus, when the legislature authorizes the court of quarter sessions to deal with municipal affairs, the intended standards need not be set forth in as precise detail as would be necessary under other circumstances: Nester Appeal, 187 Pa. Superior Ct. 313, 320-321 (1958); Palmer Township Annexation Case, supra, at pages 173 and 175 (1964). These cases review the authorities in detail. Although the statute now before us does not use the words, it plainly intends that the court should apply the standards of public interest, justice and propriety.

Moreover, as President Judge Gawthrop observed in Tredyffrin Township Supervisors Election, supra, the legislature did not confer unlimited authority upon the judiciary in this statute. The court can only act when there is a petition, signed by a specified number of electors, and when the township has a certain speci-

fied population. The authority granted is that of choosing two supervisors, not some number selected at the whim of the trial judge. Finally, the actual selection of supervisors is left to the nomination and election procedure of the township in question, and is not by an appointment of the court.

For these reasons, we conclude that the statute, although it confers discretionary power upon the court, does so lawfully and properly and that the motion to dismiss should be refused.

And now, May 24, 1966, the motion to dismiss the petition to increase the number of supervisors is hereby dismissed.