## South Union Township Appeal.

Argued November 14, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Joseph P. Matuschak,* for appellant.

*Ira B. Coldren, Jr.,* with him *Milton D. Margolis,* and *Coldren & Adams,* for appellees.

OPINION BY ERVIN, P. J., December 16, 1966:

This is an appeal from the order of the Court of Quarter Sessions of Fayette County annexing a portion of the Township of South Union, a second class township, to the City of Uniontown.

Following the filing of a complaint by the township, an initial hearing was held and testimony taken before FEIGUS, J., and the matter was then referred to commissioners for report after the hearing judge preliminarily certified the legality of the proceedings and the propriety of the annexation as serving the public interests. A final hearing was held by FEIGUS, J., and arguments heard by the court in banc, which entered the order appealed from.

From the testimony it appears that the portion of South Union Township involved in this annexation has commonly been known by the name of one of its thoroughfares as Belmont Circle and is mainly comprised of a plan of lots laid out in 1926, known as Derrick Farm. It is contiguous to the City of Uniontown and is one of the prime residential areas of the county. It is inhabited by approximately 119 freeholders or property owners translated into approximately 211 taxable inhabitants, of whom 73 of the former and 142 of the latter were signatories to the petition for annexation. The assessed valuation of the area for purposes of real estate taxation in 1965 was $786,250, as compared with the total township assessed valuation of $11,095,500. Virtually all homes in the area have been served by the sewage system of the City of Uniontown upon an assessment basis. It is approximately one mile distant by roads from downtown

Uniontown. The area is included for planning and zoning purposes as a part of Greater Uniontown in the comprehensive plan of the City of Uniontown. The mailing address of its residents is Uniontown. The Township of South Union with a population of 10,895 persons is a second class township governed by a board of three road supervisors. It has no paid police force and fire protection is accomplished by way of volunteer fire departments. It furnishes no refuse collection services. It has not provided street lighting in this compactly built-up area. Its present bonded indebtedness is $50,000. It operates no sewage system and, except in Belmont Circle and other areas contiguous to Uniontown serviced by the Uniontown system, sewage is discharged into individual septic tanks or otherwise disposed of at random.

The City of Uniontown, with a present population of 17,600 persons, is a third class city, governed by a mayor and council. It has a paid police force of 31 officers and a paid fire department of 16 full time employees assisted by volunteers. It maintains its own refuse collection department and provides weekly and semi-weekly collections of refuse to its inhabitants at a charge of $18 per year for a housing unit. It provides street lighting and street cleaning services on all city streets. It provides organized playground facilities in various sections of the city. It provides comprehensive trunk sewage facilities under streets or alleys for all city properties. It is the capital of Fayette County. Its facilities and institutions have long provided for the business, health, recreational, civic, religious and cultural needs of the inhabitants of the abutting townships. It supports a public library and will probably soon operate the same as a municipal service.

In this appeal, the township raises no question as to the legal regularity of the annexation proceedings.

The township has conceded that the annexation proceedings were conducted in conformity with the applicable statutes. The three objections presently raised by the township-appellant relate only to the propriety or wisdom of the annexation and to the evidence offered in this regard.

The first contention of the township is that the court below should not have found the annexation to be in the public interest because there was no evidence as to the reason for annexation. Although the annexation petition was signed by 142 taxable inhabitants, including 73 property owners, not one of them was called to the witness stand to testify as to why annexation was desired. The township contends that this is fatal, arguing that the motive of the proponents of the proposed annexation is one of the factors which the court must consider in determining whether to allow an annexation. It cites the cases of *West Conshohocken Borough Appeal,* 405 Pa. 150, 173 A. 2d 461 (1961); *Chartiers Township Appeal,* 414 Pa. 176, 199 A. 2d 443 (1964); *Palmer Twp. Annexation Case,* 416 Pa. 163, 204 A. 2d 760 (1964).

In the *Chartiers* case, supra, the decree of annexation was reversed because the only assigned reason of the court below, as the basis for its order, was "this Court . . . is powerless to withhold its approval where a majority of the persons involved, has expressed their desire to be annexed. . . ."

Mr. Justice JONES said: "What the court overlooked is its duty under the statute. Granted that the majority of the freeholders in the area desire annexation and that such fact is a factor to be considered among other factors in determining the desirability and propriety of annexation, there are other factors which must be considered and weighed by the court."

It is to be noticed that Mr. Justice JONES referred to the "desire" of the freeholders and not the "reasons

for the desire." The desire was indicated in the present case by the signing of the petition for annexation, the intervention of six of the petitioners and the active participation in the proceedings by their attorney. Again, in *Palmer Twp. Annexation Case,* supra, the Supreme Court held that the court below "seemed to pay undue deference to the wishes of the proponents without finding any overall propriety in the annexation in serving the public interest." (page 179)

The opinion of Judge FEIGUS shows that he did not confine himself to approving the desires of the petitioners but gave thorough consideration to many other factors and found that "On the merits, it is our considered opinion that the requested annexation should be allowed. The annexation is in the best interests of the general community. . . ."

The *West Conshohocken Borough* case, supra, is clearly distinguishable. There the record showed affirmatively an improper motive on the part of the petitioner, who was a developer, who sought to avoid the adverse ruling of the township zoning authorities by annexation to a borough where he hoped to get a more favorable ruling.

We do not feel it was necessary to call the petitioners to explain their reasons. In the absence of evidence to the contrary there is a presumption of regularity in governmental actions.

The township's second contention is that the court below erred in admitting into evidence, over its objections, testimony not shown to be relevant. This argument is a sequel to its previous contention. The township contends that since there was no evidence on the record of the reasons for the petitioners' desires for annexation, any testimony comparing the municipal services furnished by the city and by the township was irrelevant. The township overlooks the fact that in annexation cases neither the petitioners nor the com-

plainants have any burden of proof and that even in the absence of any complaint, the court below has the duty of making its own inquiry in order to be satisfied (1) that the procedures that have been followed conform in all respects to the statutory requirements and (2) that annexation is in the public interest: *Palmer Twp. Annexation Case,* supra, at page 177. Therefore the evidence complained of clearly becomes relevant and if the parties had not offered it, the court itself could have insisted upon its presentation.

The township's final contention is that the court below abused its discretion in ordering the annexation.

Under this heading the appellant lays great stress upon the number of past annexations and the threat of future annexations by the City of Uniontown. We repeat what we said in *West Mead Twp. Annexation Case,* 206 Pa. Superior Ct. 166, 172, 213 A. 2d 124 (1965), as follows: "We have not overlooked the complaint of the township that it is being carved up piecemeal. We agree with the pronouncement of Judge DIGGINS in In Re: Annexation of Portion of Chester Township, 47 Del. Co. Repts. 288, that 'While this is a legitimate argument . . . it is the responsibility and duty of the court to stop it at the point where the interests of the township exceed those of the people involved. . . .' We do not believe that that point has been reached at the present time."

At the oral argument these annexations were denominated "raids" by the city. This contention overlooks the fact that in all the annexation statutes the initial move must come from the property owners in the area which is to be annexed. The city cannot make a raid. We answered a similar contention in *Lancaster Annexation Case,* 183 Pa. Superior Ct. 618, 626, 627, 132 A. 2d 743, in the following language: "Appellants complain that affirmance of this annexation would make their industrial developments nearby subject to

'raiding' by the city. The 1953 Act permits annexation by the city only after a petition is presented to it by the owners requesting the annexation. In these cases the owners were motivated by the advantages and services which could be obtained from the city and which the township either was unable or unwilling to furnish. The piecemeal character of the annexation results from the procedure presently prescribed by the legislature. The city must await the petition of the property owners before it can exercise the act of annexation. Although this results in geographic irregularity, the present procedure does serve as a sound and practical deterrent to any overzealousness which the city might have."

An examination of the record and the thorough opinion of Judge FEIGUS shows that the court carefully considered the testimony as it affected the city, the residents of the area to be annexed and the residents remaining in the township. This is clearly shown in the opinion filed which states: "On the merits, it is our considered opinion that the requested annexation should be allowed. The annexation is in the best interests of the general community and represents a logical and proper land and population transfer from one municipality to another, without substantial harm or detriment to the transferor township. The inhabitants of Belmont Circle have long been considered members of the Uniontown community and are now entitled to participate as full partners in its political life and institutions and to share in the problems, expenses, benefits and services of its urban form of government. We are satisfied that the detachment of this section from South Union Township will be only temporarily disruptive by way of loss of tax revenues, and that the township government will continue to serve its remaining inhabitants efficiently as one of the county's larger rural governmental units. Union-

town and South Union Township are complementary governments and have in the past and should in the future enjoy the mutual benefits of close cooperative efforts."

The order of the court below is affirmed.