## West Conshohocken Borough Annexation

*John G. Kaufman* and *Patrick C. Campbell,* for National Industrial Builders.

*James E. Meneses,* Solicitor for Upper Merion Township.

*A. Richard Gerber,* Solicitor for Borough of West Conshohocken.

GROSHENS, P. J., January 24, 1969.—This is a proceeding instituted by Upper Merion Township attacking the legality of an annexation of a part of Upper Merion Township by the Borough of West Conshohocken.

National Industries Builders, Inc. (hereinafter referred to as "National"), the only land owner in the annexed area, intervened.

By agreement of counsel for the township, the borough and National, the Gulph Mills Civic Association and the West End Community Club, unincorporated associations representing residents of the township near the annexed area, were given leave to participate in the litigation.

The appeal does not raise any procedural irregularities in the annexation procedure and the only issues before the court are: (a) whether the annexation serves the public interest, and (b) whether the approval by the electorate on April 23, 1968, of question IV, proposal no. 6, to amend the Pennsylvania Constitution on Local Government, renders the annexation proceeding void.

## FINDINGS OF FACT

1. Upper Merion Township is a township of the second class, and West Conshohocken is a borough, bordering, in part, the township.

2. National is the owner of 26.515 acres of land situate in the township and contiguous to the borough.

3. National is also the owner of a tract of land situate in the borough, and contiguous to its land referred to in no. 2 hereof, which it has developed for industrial uses permitted under the ordinances of the borough.

4. On May 25, 1965, National petitioned the township for a change of zoning of its land in the township from "R-2 Residential" to "L1 Limited Industrial," which, after public hearing, and study by the township planning commission, the township refused to so reclassify.

5. On February 22, 1966, National petitioned the township for a change of zoning of its land in the township from "R-2 Residential" to "SM Suburban Metropolitan," which, after public hearing and study of the township planning commission, the township refused to so reclassify.

6. On the petition of National, the borough on May 3, 1967, at a regular meeting of borough council, duly enacted ordinance no. 258, annexing the land in question in the township to the borough, which was duly advertised.

7. The annexed area comprises 26.515 acres of undeveloped land surrounded on three sides by other lands in the township, except for a frontage of approximately 400 feet along the center line of Balligomingo Road, a township highway.

8. The entire periphery of the annexed area is over one mile in length and made up of distances, between 15 angle point, of which 10 are right angles, ranging in length from 22 feet to over 900 feet.

9. The common boundary between the annexed area and the old line of the borough is approximately 700 feet.

10. The annexed area juts into the township in a

westerly direction irregularly for a depth of over 1,500 feet, and in a northerly direction irregularly for a depth of over 600 feet.

11. The annexed area is along the crest of a relatively high steep hill, and has no natural boundaries, and except for the short frontage along Balligomingo Road, no visible boundaries. When developed, as proposed by National, the crest of the hill will be flattened to create a usable area of about 13 acres, leaving approximately 17 acres for the steeply sloping sides.

12. Both the township and the borough have building ordinances and land subdivision ordinances.

13. The township has a comprehensive zoning code, but, at the time of the hearing, the borough did not have such a code.

14. The township has public sanitary sewer facilities to handle sewage from the annexed area, but the borough does not have such facilities presently available.

15. The township has a police force on a 24-hour basis consisting of 35 full-time officers, 10 part-time women and 24 auxiliary police officers, equipped with 11 pieces of police motor vehicles and a modern police control communications center. The borough's police force consists of 2 full-time and 2 part-time officers.

16. The area of the township surrounding the annexed area is zoned "R-2 Residential," and is partially improved.

17. The proposed industrial development of the annexed area will create serious surface drainage problems for the surrounding lower land owners in the township.

18. The proposed industrial development of the annexed area will contribute badly needed tax revenues for the borough, and profits for National, but will not serve the best interests of the public generally.

## DISCUSSION

The township has not challenged any procedural steps taken in the passage of the annexation ordinance, and, therefore, the sole questions to be decided are the "propriety of the annexation as serving the public interest" (Palmer Township Annexation Case, 416 Pa. 163, 168 (1964)), and the effect of the constitutional changes.

In our opinion, the annexation is not in the public interest for many reasons.

First and foremost is the utterly ridiculous, and even fantastic, shape of the annexed area. It is clearly against sensible public policy to render an existing municipality grotesquely misshapen to conform to the private property lines of an owner trying to escape from what it considers unfavorable public regulations. The annexed area in this case is a weirdly shaped appendage on the borough which gives it the appearance on a map of a Martian monster, or a Rube Goldberg contraption. If a municipality is to grow, its growth should be with a minimum number of courses and distances, along natural boundaries, such as streams, or along highways, using visible boundaries where practicable. The annexed area here has as many courses and distances as the entire borough boundary prior to annexation, excepting the boundary formed by the Schuylkill River. In the annexed area, one part of the borough is only 22 feet wide, and at one section of the boundary there are four right angles in the boundary line within a distance of 195 feet. This kind of municipal boundary fixing is sheer governmental nonsense, and, of itself, is sufficient ground to hold this annexation as not in the public interest. Crazy quilt municipal expansion is contrary to sound public policy, and bad per se.

The existing land use regulations and zoning, sewage disposal and surface drainage facilities and the available municipal services all indicate that the development of the annexed area as a part of the township will better promote the public interest in the general area, than as a part of the borough.

It cannot be denied that the annexation would materially improve the tax structure of the borough and supply much needed revenue for municipal purposes, but the general public disadvantages that go with the annexation far outweigh the financial advantage to the borough.

There remains to consider the effect, if any, of the approval by the electorate on April 23, 1968, of question IV, proposal 6, to amend the Pennsylvania Constitution on Local Government. The intervenors contend these constitutional changes render the annexation proceeding void. In view of our disapproval of the annexation as not in the public interest, it becomes unnecessary for us to dispose of the constitutional questions involved. However, we note in passing, that the legality of ordinance no. 258 is to be determined as of the date of its enactment, which was May 3, 1967, nearly a year before the vote of the electorate on the constitutional amendment.

## ORDER

And now, January 24, 1969, ordinance no. 258, entitled "An Ordinance Annexing A Portion of Upper Merion Township To The Borough of West Conshohocken," enacted May 3, 1967, is declared illegal and void.